## WEST TEXAS UTILITIES CO. v. WILLS.
### No. 9087.

Court of Civil Appeals of Texas. Austin.
May 6, 1942.

On Rehearing Sept. 16, 1942.

A. K. Doss, of Abilene, and Collins, Jackson & Snodgrass, of San Angelo, for appellant.

Wm. E. Davenport and T. R. Johnston, both of San Angelo, for appellee.

McCLENDON, Chief Justice.

Appeal in a suit for slander from a final judgment upon a special issue verdict in favor of Wills (appellee) and against Utilities (West Texas Utilities Company, appellant) for $852 actual and $300 exemplary damages.

The case was before us in a former appeal from an order overruling a plea of privilege. 135 S.W.2d 138. A careful examination of the statement of facts discloses that the evidence upon the two appeals was in substance largely the same; and since a very full and accurate statement of the material evidence is given in Associate Justice Blair's opinion on the former appeal we refer, in the interest of brevity, to that opinion for a full statement of the evidence, confining our present statement to such brief outline thereof as may be necessary to a clear understanding of the points raised in the appeal and of our holdings thereon.

The slanderous words which form the basis of the judgment were uttered by Huss, Chief Engineer of Utilities at its San Angelo power plant, to Camfield, an employee of Utilities at that plant, concerning Wills, another employee. These words were: "There is nothing wrong with him, he is just trying to put the big britches on the Company." The alleged implication of this language was in substance that Wills was attempting to commit a fraud upon Utilities by feigning that he had been injured in the course of his employment when in fact he had received no injury.

The circumstances surrounding this utterance, as gleaned from plaintiff's evidence, may be epitomized as follows: Wills had been in the employ of Utilities at its San Angelo plant for a number of years as a switchboard operator. In the fall of 1937 the National Brotherhood of Electrical Workers, an affiliate of the American Federation of Labor, undertook to unionize the plant, and obtained a charter for a local union of which Wills became a member and officer. Utilities was making strenuous efforts to prevent unionization of its plant and Wills was remonstrated with by some of Utilities' officials for his "lack of co-operation" in this regard. December 4, 1937, Wills was transferred from the switchboard to the repair gang. Although the salary was the same, this change was regarded as a demotion because of the difference in character of the work; that on the repair gang being hard manual labor. This demotion was due to Wills' "lack of co-operation." Three days later Wills sustained an injury to his back while working as a member of the repair gang. January 20, 1938, he was discharged by Huss, with the statement that it was on account of his lack of co-operation and his claiming to have been injured. The language complained of was uttered by Huss to Camfield

at the plant a few days after Wills was discharged.

Utilities has briefed its case under fourteen points.

Point one urges that Huss was not acting within the scope of his employment, and therefore the utterance was not imputable to Utilities. Huss had general supervision of the San Angelo plant, with authority to "hire and fire" the several employees. The fight to unionize the plant was then going on, in which Utilities was endeavoring to prevent unionization and Wills was one of the leaders in the efforts to unionize. Wills had been discharged, and the evidence showed there was discussion among other employees concerning his discharge. Huss had inquired of Camfield whether he had heard of such discussion. The attitude of the other employees in that regard was evidently a matter of concern to Utilities in its relation to its employees, as the morale of the employees was no doubt involved in this attitude. The clear purpose of the utterance of Huss was to justify the discharge of Wills upon a valid ground, and to negative any implication that Utilities was motivated by Wills' unionization activities. Viewed in this aspect, which the evidence amply supports, Huss was clearly acting within the scope of his duties to his employer. For an able discussion of this subject with digest and analysis of authorities see Southwestern Tel. & Tel. Co. v. Long, Tex.Civ.App., 183 S.W. 421.

■ The second and fourth points are in substance that if Huss was acting within the scope of his employment then (2) Camfield was also so acting and there was therefore no publication of the slander since it was in effect a communication by Utilities to itself, and (4) in any event the communication was privileged and therefore not actionable absent a showing of express malice. These points are not well taken for the reason that while Huss was acting within the scope of his duties to Utilities, Camfield was not so acting. He had no duties to his employer concerning the maintenance of morale of his fellow employees with regard to the unionization vel non of the plant. In this respect the company was dealing with its employees at arm's length. Its efforts to counteract unionization, in so far as they were legal, had nothing to do with the duties of such employees to the company in their relation as employees.

The third point contends that the utterance was on its face complimentary and not derogatory, and therefore it was necessary to show actual damages to sustain an action for slander.

■ The charged implication of the utterance, which the evidence supports, was that Wills was dishonest in his dealings with Utilities, in that he was attempting to practice a fraud upon it by feigning an injury which did not exist. It is now a generally accepted doctrine that to charge an employee with dishonesty in his dealings with his employer is slanderous per se in that it falls within the general classification of "words which affect a person injuriously in his office, profession, or occupation." Mayo v. Goldman, 57 Tex.Civ. App. 475, 122 S.W. 449, 450; 33 Am.Jur., p. 86, § 71. It is likewise a general rule that in order to authorize recovery of substantial (as distinguished from nominal) damages, for a per se slanderous utterance, it is not necessary to prove special damages, since injury to reputation is presumed. Jenkins v. Taylor, Tex.Civ.App.. 4 S.W.2d 656; 37 C.J., p. 115, § 564, B. This holding also disposes of point seven which asserts there was no proof of special damages.

■■ Points five and six complain of the failure of the court to submit to the jury the issues (5) whether Huss was acting within the scope of his authority and (6) whether the uttered words were in fact slanderous. We think appellant was clearly entitled to have these issues submitted upon proper request therefor. The points were raised only by objection to the charge; and appellee contends that this was not sufficient and a special issue thereon should have been requested by appellant, citing Wichita Falls & O. Ry. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, and other cases. Since we are reversing the judgment on other grounds, and since the new rules will apply to another trial of the case, we find it unnecessary to consider this question of practice.

The eighth point contends there was no basis shown for exemplary damages, since the malice of Huss was not imputable to the company. We think the conversation which Wills had with Schroeder, vice-president and general manager of appellant, which is detailed in our former opinion, was sufficient to authorize a finding that the slanderous utterance was ratified, if not in fact authorized, by appellant.

The remaining six points complain of rulings of the court upon the admission of evidence. Before considering them on their merits we will dispose of a question of practice, raised by appellee, which is applicable alike to each of them. Appellee contends that these points should not be considered because they were not properly raised in appellant's motion for new trial as provided in District Court Rule 71a (126 Texas VII, 99 S.W.2d XXX). The record showing in this regard is as follows: The judgment was rendered May 24, 1940. Appellant's motion for new trial was filed the same day and overruled June 17, 1940. It contained fifteen assignments of error, each complaining of a separate ruling upon the admission of evidence. There are fifteen separate bills of exception corresponding respectively to these assignments, all filed July 15, 1940, after adjournment of the court. Since the second ·assignment (covered by point 9) is illustrative of them all in this regard, we shall confine our discussion to it. It reads:

"Because the court erred in admitting the evidence set out under the circumstances set out, over the objections of the defendant as set out in its Bill of Exceptions No. 2, here referred to and made a part hereof."

Bill of exceptions No. 2 reads: "Defendant tenders as this bill of exception the questions, answers, objections and actions reflected by the statement of facts beginning at Line 3, Page 18, through Line 12, Page 18, and in order to make clear the testimony and the reasons for its objections thereto it adopts as part of its bill Lines 7 to 28, each inclusive, Page 17, of the Statement of Facts."

The court's approval reads: "The foregoing having been examined, submitted to ·opposing counsel and found to be correct and not objected to by opposing counsel, is allowed as Defendant's Bill of Exception No. 2, and ordered filed as a part of the record herein, this 15 day of July, A.D. 1940."

Appellee's contention is that the assignments in the motion for new trial did not direct the court's attention to any specific rulings that were complained of because the references in the assignments were to bills of exceptions that were not then in existence, they not having been presented to the trial judge and filed until a month after the motion was overruled.

The purpose of Rule 71a is clearly and succinctly stated in Judge Sharp's opinion in Stillman v. Hirsch, 128 Tex. 359, at page 369, 99 S.W.2d 270, 275. That purpose is "to give to the trial judge an opportunity to try the case correctly, and to avoid unnecessary appeals," by directing his attention to such asserted errors as the proponent of the motion expects to rely upon on appeal, so that the judge "may have an opportunity of reviewing his decisions, and, if need be, correct them." Substantial compliance with the rule in the light of its objective, is all that is required. The course followed in this case carries with it the presumption, we think, that the trial judge had before him, at the time he overruled the motion, the substance of the data contained in the several bills of exceptions which he later approved. The motion was overruled and the several bills approved without qualification. Appellee made no objection to the bills in the form and manner or as regards the time of their presentation. The trial judge approved them without qualification. This clearly shows that the method adopted by appellant of preserving its exceptions to the several rulings upon evidence was acquiesced in both by the trial judge and appellee. We therefore hold that the invoked rule was complied with.

The ninth point complains of admission of Camfield's evidence to the effect that he had heard repeated several times around the plant "that there was nothing the matter with him (Wills) that he was just faking." This evidence, we think, was admissible as showing the setting in which the slanderous utterance was made, and the objective of Huss in making it. As detailed by Camfield, the attendant circumstances were as follows:

"Well, shortly after Mr. Wills was fired —I call it—soon after he quit work over there, Mr. Huss came to me in the shop and asked me if I had heard it discussed around the plant as to why Mr. Wills was not there. I told him I had not heard any discussion to speak of. He told me he had heard it around that some of the boys had been discussing it and that he had been unjustly let out from the service. He said he didn't figure it that way; that the Company figured he was not hurt and was trying to put the big britches on the Company."

We overrule the point.

Points ten and eleven complain of admission of evidence of Wills to the effect (10) that he had not earned much since his discharge, that he didn't have much left after paying his expenses and that he was in debt several hundred dollars; and (11) that his credit rating had been impaired. We sustain these points for the reason that the evidence does not show any causal connection between the slanderous utterance and Wills' financial condition or his credit rating. A different question would be presented if the suit were one for wrongful discharge.

Point twelve complains of admission of testimony of Wills to the effect that he was entitled to $20 per week from appellant's insurance carrier as workmen's compensation for his injuries. Wills' claim was properly filed, denied, and suit brought thereon. It was later compromised for $300. No tenable hypothesis is presented under which evidence as to what Wills was in fact entitled to under his compensation claim had any relation to any issue in the case. Moreover the evidence was pure hearsay, since Wills testified he based it upon what his attorney told him.

Points thirteen and fourteen complain of the admission of testimony of Wills and wife detailing a statement made to them by the insurance adjuster, to the effect that the officials of appellant had told him "that there was not a damn thing wrong" with Wills and not to pay him anything. This evidence was hearsay and clearly not admissible on that ground.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.

BAUGH, J., did not sit in this case.

## On Motions for Rehearing by Appellant and Appellee.

### McCLENDON, Chief Justice:

Each party has filed a motion for rehearing. We will first consider that of appellee. Our holding that the several bills of exceptions were entitled to consideration under Dist.Ct.Rule 71a is challenged as being in conflict with the holding in Galveston, H. & S. A. Ry. v. Easton, Tex.Civ. App., 257 S.W. 924. We have given that case careful consideration and have concluded that the point was not necessary to the decision, and the judgment can be upheld on the ground that the error, if any,

presented by the bill was one which might have been cured by an instruction to the jury, if timely made, which was not done. Application for writ of error was dismissed for want of jurisdiction, and therefore there has been no authoritative pronouncement of the Supreme Court approving this particular holding. The case was decided (1923) prior to the promulgation of Rule 71a, but the principle involved was substantially the same. We do not find that this case has ever been cited on this point, or that the point has been adjudicated in any other case.

We have carefully reconsidered our original holding and have concluded that it is correct. The record does not show when the bills of exception were presented to opposing counsel or the trial judge. It merely shows the dates of approval and filing as quoted in our original opinion. The motion for new trial describes the several bills of exceptions by number, and they were each approved generally and specifically as to number, and without qualification. They were submitted to opposing counsel "and not objected to." They were specifically "found to be correct." The only purpose of the bills was to preserve the several rulings for review by the appellate courts. Approval of these bills was supererogatory if the rulings they related to were not entitled to consideration by reason of their substance not being expressly embodied in the motion for new trial. Their unqualified approval, without objection by appellee's counsel, we think constituted an acquiescence of the judge and counsel of this method of procedure, and made the several bills parts of the record for all purposes regardless of the date of their approval and filing.

Other questions raised by appellee's motion are sufficiently covered in our original opinion.

Our statement that Wills' "lack of co-operation," with which he was charged by some of Utilities' officials, related to his union activities is challenged by appellant. We think this is a fair inference from evidence introduced by Wills. Utilities offered no evidence in the case, and we have no reasonable explanation of the expression in the evidence from Utilities' viewpoint. However, it is not material whether this construction of the expression is correct, since Wills' demotion and discharge do not form the basis of the suit. In this connection appellant asserts that

"even the National Labor Relations Board found Wills guilty of lack of co-operation in the performance of his duties on the switch-board" and that the United States Circuit Court of Appeals, 5th Circuit, National Labor Relations Board v. West Texas Utilities Co., 119 F.2d 683, "determined that appellant committed no wrong in removing Wills from the switch-board and from later discharging him." It is not even contended that there is any record showing of these assertions, and manifestly they cannot be considered on this appeal.

■ We have reached the conclusion that we were in error in holding that the conversation Wills had with Schroeder was sufficient to authorize a finding that the slanderous utterance was ratified, if not in fact authorized, by appellant. The full substance of this conversation is embodied in the following quotation from Wills' testimony.

"I told him (Schroeder) the Chief Engineer (Huss) told me when they paid me 'that they were not getting the co-operation out of me they should have had on the job I was working on, and that he had transferred me to the bull gang, and after I had gone to work on the repair gang I claimed to have been injured, and that according to my doctor I was not injured, and that under these circumstances the company did not need me any longer.' He (Schroeder) said 'that is right.'"

It is not clear whether this conversation was before or after the slanderous utterances. It does show that Schroeder was cognizant of the grounds upon which Huss asserted that he had transferred Wills to the "bull gang" and later discharged him, and that Schroeder approved of this action. It does not show, however, that Schroeder authorized Huss to make the slanderous statement to anyone, or that he knew of or ratified such statement. We therefore hold that there was no basis in the evidence for a judgment for exemplary damages, and our former opinion is modified to that extent.

■ Under the fourth subdivision of appellant's brief a number of criticisms are leveled at our opinion as regards our holdings to the effect that the utterance sued upon was slanderous per se. It is contended in substance that in order to be so the words must clearly import, on their face, without innuendo or explanation and independently of the surrounding circum-stances, that the complainant is guilty of the slanderous accusation. The correct rule in this regard is embodied in the following terse language from the Restatement of the Law of Torts, Vol. 3:

"§ 614. Determination of Meaning and Defamatory Character of Communication.

"(1) The court determines whether a communication is capable of a defamatory meaning.

"(2) The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient."

We especially direct attention to comments b and c under this section. Under the latter the context and extrinsic circumstances surrounding the publication are mentioned as "factors considered by court and jury." To the same effect, though somewhat differently expressed, is the following from 33 Am.Jur., p. 277, § 294:

"Where the language complained of is clear and unambiguous, it is the duty of the court to determine whether it is actionable, either per se or per quod, but where it is ambiguous, of doubtful import, or susceptible of two or more interpretations, its actionability must ordinarily be decided by the jury under appropriate instructions from the court."

■ There is no distinction between slander per se and per quod as regards the method of determining (1) whether the words charged were in fact published, and (2) the meaning the words conveyed to the recipient. When these questions are determined it then becomes a question of law whether the words are slanderous per se. It is the meaning of the words as thus established which determines their character as slanderous vel non. Our holding under point 6 in appellant's brief that it was a jury question whether the uttered words were in fact slanderous, should be interpreted in the light of the foregoing. It would be more exact to say that it was a jury question whether the words conveyed the asserted meaning to the recipient.

It is further contended under this subdivision that our holding that as to slander per se it is not necessary to prove actual damage as distinguished from nominal damage in order to recover the former is in conflict with our holding in Maass v. Sefcik, 138 S.W.2d 897. There may be some expressions in that opinion which, re-

moved from the context, would warrant the construction appellant seeks to place upon it. But a careful study of the opinion and the authorities cited will demonstrate that this construction is not tenable. In that case the issue of general damages was submitted to the jury under proper instruction, and the answer was "none." The holding was that, since the proof did not establish any damage as a matter of law, the finding of the jury that there was no damage would not be disturbed. In other words, the existence vel non, of general damages and the amount thereof are questions of fact. To the same effect are the authorities there cited. Freeman v. Schwenker, Tex.Civ.App., 73 S.W.2d 609; Anderson v. Alcus, Tex.Civ.App., 42 S.W. 2d 294; Flournoy v. Story, Tex.Civ.App., 37 S.W.2d 272; 27 Tex.Jur., pp. 690–693.

There is probably no firmer established principle in the law of libel and slander than that proof of actual damage is unnecessary in order to recover general damages for a per se slanderous utterance. 27 Tex.Jur., p. 691, where it is said: "Where the words used are libelous or slanderous per se the law presumes actual damages, and in order to recover it is not necessary to prove them." Note 14 cites a long line of supporting Texas cases. Many others might be cited. See also Restatement of Torts, Vol. 3, § 621; 33 Am.Jur., p. 189, § 200. The elements of general damages, which the law presumes or infers, "without proof that they have been incurred * * * include injuries to character or reputation, injuries to feelings, mental suffering or anguish and other like wrongs and injuries incapable of money valuation." They are essentially compensatory and therefore substantial as distinguished from nominal damages. The existence vel non and the amount of compensatory general damages was therefore a proper question for jury determination. The fact that Camfield testified that he believed that Wills was hurt, that Huss' statement to the contrary did not change his opinion, and that that statement didn't lower Wills in his estimation, did not (as contended in appellant's point 7 in its brief) negative as a matter of law the existence of general damages. The testimony was of course pertinent and proper for the jury to consider.

Other matters presented in the motion are covered in our original opinion.

Our former opinion is modified, as above stated, with respect to the issue of exemplary damages. In all other respects both motions are overruled.

Granted in part as to issue of exemplary damages; in all other respects both motions overruled.