# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00631-CV

**Texas Disposal Systems Landfill, Inc., Appellant**

**v.**

**Waste Management Holdings, Inc. (f/k/a Waste Management, Inc.) and Waste Management of Texas, Inc., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. 97-12163, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## O P I N I O N

Texas Disposal Systems Landfill, Inc. (Texas Disposal) appeals a take-nothing judgment in three issues: (1) whether the district court erred when it failed to instruct the jury on defamation *per se* and presumed damages; (2) whether the jury's award of zero damages was against the great weight and preponderance of the evidence; and (3) whether the district court improperly dismissed its defamation, attempted monopoly, and tortious interference claims on summary judgment. In a cross point, appellee Waste Management, Inc. (Waste Management) claims that Texas Disposal's surviving defamation claim must fail because Texas Disposal did not meet its burden to prove by clear and convincing evidence that its initial claim for defamatory communication was made with actual malice. We overrule Texas Disposal's issues and Waste Management's cross point and affirm the district court's judgment.

**BACKGROUND**

Texas Disposal competes with Waste Management in the waste removal and landfill services industry in the Austin and San Antonio markets. In May 1995, Texas Disposal and the City of San Antonio started negotiating a contract that contemplated Texas Disposal assuming responsibility for a waste transfer station and hauling waste to its landfill, starting in February 1997. Contemporaneously, Texas Disposal responded to a City of Austin request for proposal to accept and dispose of its municipal solid waste.

On January 30, 1997, a Waste Management consultant faxed an "Action Alert" memo to environmental and community leaders in Austin that questioned the environmental integrity of Texas Disposal's landfill and requested that the memo recipients discourage San Antonio officials from sending waste to that landfill. Texas Disposal concluded its negotiations with San Antonio in January 1998 and was awarded the waste disposal services contract. Texas Disposal signed a separate waste disposal contract with Austin in 1999.

Texas Disposal filed its initial defamation suit in October 1997, alleging that the Action Alert was defamatory and caused damages related to the delay in securing both the San Antonio and Austin waste disposal contracts. After this initial suit was filed, Waste Management published a series of communications that we will collectively refer to as the "1998 Communications." Waste Management sent a letter (Drenth Letter) to the San Antonio Public Works Department on March 10, 1998, questioning zoning and other issues related to Texas Disposal's trash transfer facility. In May 1998, Waste Management sent a separate anonymous letter (Unsigned Memo) to the TNRCC criticizing Texas Disposal. This memo was distributed to San

Antonio council members, in what Texas Disposal characterizes as an effort to persuade the council to remove Texas Disposal's right to operate its trash transfer facility in San Antonio. On July 14, 1998, Waste Management distributed a press release that Texas Disposal claims falsely accused it of organizing a protest in an effort to discredit Waste Management before the Austin contract was awarded. Another Waste Management document compared Texas Disposal's landfill to an "unlined trench," implying Texas Disposal's facility was not environmentally sound.

Texas Disposal also alleges that in 1993, agents of Waste Management encouraged the publication of newspaper articles that criticized waste disposal at the Texas Disposal landfill, that in 1995 and 1996, a consultant billed Waste Management for time spent on issues related to the agreement between San Antonio and Texas Disposal, and that Waste Management hired a lobbyist and offered him incentive compensation if the lobbyist could prevent Texas Disposal from obtaining business from San Antonio. Waste Management admitted that its ultimate goal was to close the San Antonio waste transfer facility. Texas Disposal implied that ceasing to operate the San Antonio facility would result in crippling its ability to do business there.

Texas Disposal filed an amended petition on July 25, 2000 that included claims based on the 1998 Communications, characterizing the acts as an "ongoing pattern of conduct." The district court granted Waste Management's motion for summary judgment and dismissed the claims based on the 1998 Communications, holding that these claims were barred by the statute of limitations. It also ruled, as a matter of law, that the Action Alert was defamatory. As a result of the summary judgment, the Action Alert defamation claim was the only claim left for trial. Although the jury found that the Action Alert was false, and that Waste Management knew that the statement

3

was false or acted with reckless disregard for the truth, nevertheless, the jury awarded Texas Disposal zero dollars in damages. Texas Disposal brings this appeal.

## DISCUSSION

Texas Disposal appeals this case in three issues: (1) whether the district court erred in refusing to instruct the jury on presumed damages; (2) whether the jury's finding of zero damages is factually sufficient; and (3) whether the district court properly dismissed on summary judgment its claims based on the 1998 Communications, and its attempted monopolization and tortious interference claims. In a cross point, Waste Management challenges the factual sufficiency of the jury's finding that Waste Management published the Action Alert with actual malice and argues that Texas Disposal did not meet its burden to show actual malice by clear and convincing evidence.

### *Jury Instruction*

In its first issue, Texas Disposal asserts that the district court erred in refusing to instruct the jury on defamation *per se*. We disagree.

Under Texas law, a statement is defamatory if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury, or to impeach any person's honesty, integrity, virtue, or reputation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 1997). A statement is defamation *per se* if the words are so obviously hurtful to the person aggrieved that they require no proof of their injurious character to make them actionable. *Knox v. Taylor*, 992 S.W.2d 40, 50 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The statement must be unambiguously defamatory *per se* on its face, either (1) alleging criminal conduct, or (2)

4

injuring a person in his office, business, profession, or occupation. *Knox*, 992 S.W.2d at 50, *Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 91 (Tex. App.—Corpus Christi 1992, writ ref'd).

Deciding whether a statement is defamatory *per se* is the exclusive province of the court, not of the jury. *West Texas Utils. Co. v. Wills*, 164 S.W.2d 405, 411 (Tex. Civ. App.—Austin 1942, no writ). It is strictly a question of law whether the words are defamatory *per se*, but it may be a fact question for a jury to determine whether the statement was published or to resolve the meaning of the statement. *Id.* at 411.

The distinction between defamation and defamation *per se* is critical when it comes to the issue of damages. *See Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1331 (5th Cir. 1993) (applying Texas law). In a defamation action, plaintiffs must show damages by a preponderance of the evidence; however, in a defamation *per se* claim, *damages are presumed*, and thus plaintiffs need not present evidence of damages. *See id*.

The district court denied Texas Disposal's motions for summary judgment and for directed verdict, declining to find that the Action Alert was defamatory *per se* as a matter of law. Because deciding whether a statement is defamatory *per se* is the exclusive province of the court, and because Texas Disposal does not argue that there are fact issues related to defamation *per se* for the jury to resolve, such as whether the statement had been published or whether the jury needed to resolve the meaning of the statement, the district court properly declined to instruct the jury on defamation *per se* and its associated presumed damages. *See West Texas Utils. Co.*, 164 S.W.2d at 411.

Although Texas Disposal challenges the propriety of the omission of a presumed damages jury instruction, in essence Texas Disposal's challenge appears to collaterally attack the

5

district court's defamation *per se* rulings. Texas Disposal does not appear to have preserved the issue of whether the district court erred when it declined to find the Action Alert defamatory *per se*. The appellant's brief must state concisely all issues or points presented for review. Tex. R. App. P. 38.1(e). An issue presented in an appellant's brief is sufficient if it directs the attention of the appellate court to the error about which the complaint is made. *Bankhead v. Maddox*, 135 S.W.3d 162, 163 (Tex. App.—Tyler 2004, no pet.). In its review of a civil matter, an appellate court has no discretion to consider an issue not raised in the appellant's brief even if the ends of justice so require. *Id*. at 164. Because Texas Disposal does not directly challenge the district court's rulings as a point of error in its brief, we need not address whether the district court properly declined to find defamation *per se* as a matter of law. *See* Tex. R. App. P. 38.1(e); *Bankhead*, 135 S.W.3d at 163-64. We overrule Texas Disposal's first issue.

***Damages Award***

In its second issue, Texas Disposal challenges the factual sufficiency of the jury's finding of zero damages and asserts that the verdict is contrary to the great weight and preponderance of the evidence. Texas Disposal requests that we reverse the jury's verdict on damages.

If a jury's verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, the appellate court will reverse the judgment. *In re King's Estate*, 224 S.W.2d 660, 661 (Tex. 1951). A jury may not ignore undisputed facts and arbitrarily fix an amount of damages that is unfair or unjust. *Horton v. Denny's, Inc.*, 128 S.W.3d 259, 260 (Tex. App.—Tyler 2003, pet. denied). In reviewing a factual sufficiency point, the court of appeals must consider all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

6

The jury question at issue asked jurors to assign an amount of damages that would compensate Texas Disposal for any injuries proximately caused by the publication of the Action Alert. The jurors returned a finding of zero damages.

Texas Disposal presented evidence at trial that demonstrated that it was entitled to approximately $1.8 million in damages, including lost profits, about $450,000 in consultant fees paid to rebut and mitigate the alleged harm caused by the Action Alert, and about $305,000 in equipment carrying costs incurred while Texas Disposal awaited the execution of the contracts. Although at trial it attacked only a small category of the alleged damages, Waste Management presented evidence that (1) showed the Action Alert did not proximately cause delays in executing the contracts; (2) Texas Disposal was not entitled to recover damages related to mitigation; and (3) discredited a portion of the damages testimony provided by Texas Disposal's chief executive officer during cross-examination. A jury could reasonably conclude that Texas Disposal had not satisfied its burden on the proximate cause issue. Because the jury's damages finding does not go against the great weight and preponderance of the evidence, we hold that the evidence was factually sufficient to support the jury's finding of zero damages and overrule Texas Disposal's second issue.

***Summary Judgment***

In its third issue, Texas Disposal asserts that the district court erred when it dismissed its claims related to the 1998 Communications, antitrust violations, and tortious interference of existing and prospective contractual relations on summary judgment. We examine each subissue in turn.

7

<u>1998 Communications Claims</u>

In its first subissue, Texas Disposal claims the district court erred in granting Waste Management summary judgment on Texas Disposal's 1998 Communications claims based on the statute of limitations. Texas Disposal advances two arguments to support its position. First, it argues that the 1998 Communications "relate back" to its original petition because they were part of a pattern of continuing wrongful conduct that started with the improper actions alleged in the original petition. Second, Texas Disposal argues that even if the claims do not relate back, the claims are not barred by the statute of limitations because the claims arise from a continuing tort. We address each argument in turn.

The court of appeals reviews a district court's grant of summary judgment *de novo*. *McCarthy Bros. Co. v. Continental Lloyds Ins. Co.*, 7 S.W.3d 727, 728 (Tex. App.—Austin 1999, no pet.). In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Calvillo v. Gonzalez*, 922 S.W.2d 928, 929 (Tex. 1996). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). Therefore, we must view the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmovant. *See Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47.

The statute of limitations is an affirmative defense, and a defendant is entitled to summary judgment on an affirmative defense if the defendant disproves at least one element of the plaintiff's claims as a matter of law, or conclusively proves all the elements of the affirmative defense. *Friendswood Dev. Co.*, 926 S.W.2d at 282; *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 340 (Tex. App.—San Antonio 2000, pet. denied). To obtain summary judgment based on an affirmative defense, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense as a matter of law. *Friendswood Dev. Co.*, 926 S.W.2d at 282.

Texas Disposal first argues that the 1998 Communications relate back to its original petition because they are part of a pattern of continuing wrongful conduct that commenced with the actions that formed the basis of the original petition, not isolated acts. We disagree.

The statute of limitations is one year for defamation claims and two years for tortious interference with business relations and business disparagement. Tex. Civ. Prac. & Rem. Code Ann. §§ 16.002(a), 16.003 (West 1997). The claims based on the 1998 Communications, (the Drenth Letter, sent on March 10, 1998, the Unsigned Memo, sent in May 1998, and a press release distributed on July 14, 1998) would have accrued on March 10, 1998, in May 1998, and on July 14, 1998. Thus, the statute of limitations for the defamation claims based on each communication would have expired on March 10, 1999, in May 1999, and on July 14, 1999, respectively; the statute of limitations for the tortious interference claims would have expired on March 10, 2000, in May of 2000, and on July 14, 2000, respectively. *See id*. §§ 16.002(a), 16.003, 16.068. Texas Disposal did not amend its petition until July 25, 2000, after the statute of limitations for all of the alleged actions expired.

9

Under the relation-back doctrine, an original pleading tolls the statute of limitations for claims asserted in subsequent, amended pleadings as long as the amendments are not based on new, distinct, or different transactions or occurrences. *Id*. § 16.068. A "transaction" means that set of facts that gives rise to the cause of action premised thereon. *Id.*; *See Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 121 (Tex. App.—El Paso 1997, pet. denied). Texas law treats each alleged defamatory publication as a single transaction with an independent injury. *See Akin*, 34 S.W.3d at 340.

The relation-back test focuses on new, distinct, and different claims, not on whether the transactions alleged in the original and amended petitions are related or are otherwise part of the same general course or pattern of conduct. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (West 1997); *Leonard v. Texaco, Inc.*, 422 S.W.2d 160, 163 (Tex. 1967); *Waddill v. Phi Gamma Delta Fraternity*, 114 S.W.3d 136, 144 (Tex. App.—Austin 2003, no pet.). Under this test, the claims based on the 1998 Communications were "new" because they occurred after the original petition had been filed and were "distinct or different" because each communication was addressed to a different audience about different specific issues and was issued months apart from the other communications. Furthermore, under Texas defamation law, we treat each of the 1998 Communications as a separate transaction with an independent injury. *See Akin*, 34 S.W.2d at 340. Texas Disposal's contention that the acts are part of a pattern of wrongful conduct is not the focus of an inquiry under a relation-back analysis. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (West 1997); *Leonard*, 422 S.W.2d at 163.

10

In its second argument, Texas Disposal asserts that the actions it maintains in its July 25, 2000, amended petition are not time-barred because the 1998 Communications were part of a continuing tort that had not yet accrued. Generally, a cause of action accrues when a wrongful act causes an injury. *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied). However, a continuing tort is an ongoing wrong causing a continuing injury that does not accrue until the tortious act ceases. *Upjohn*, 885 S.W.2d at 543 (taking pill daily that caused continuing injury is continuing tort); *Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153, 156 (Tex. Civ. App.—Dallas 1980, no writ) (although each day of false imprisonment is itself separate cause of action, court viewed involuntary detention without access to counsel in mental hospital as one continuing tort). A plaintiff can bring a single suit for the period of time it sustains injuries from a defendant's conduct. *Upjohn*, 885 S.W.2d at 543; *Adler*, 594 S.W.2d at 156. The concept of a continuous tort originated in trespass-to-land and nuisance cases and has been expanded to include false-imprisonment cases. *Upjohn*, 885 S.W.2d at 542. Treating regularly-occurring torts, such as false imprisonment, as a continuing tort avoids a multiplicity of suits and does not force an aggrieved plaintiff to choose between filing successive suits or face denial of the privilege of the full limitation period in filing suit for each day of the false imprisonment. *Id.*; *Adler*, 594 S.W.2d at 156. However, if each of the defendant's separate behaviors caused a distinct injury, the continuing tort rule does not apply. *Upjohn Co.*, 885 S.W.2d at 543.

Each of the 1998 Communications was a discrete transaction: each was addressed to a different audience, each concerned a different issue, each was issued months apart from the other communications, and each caused an independent injury. The 1998 Communications do not suggest

11

the type of constant, continuous pattern of tortious conduct that courts have found constitutes a continuing tort, such as each day of a false imprisonment or the daily consumption of a harmful medication. *See Upjohn*, 885 S.W.2d at 543; *Adler*, 594 S.W.2d at 156. Furthermore, Texas Disposal has not offered any authority nor have we found any that has broadened the continuing tort doctrine to include defamation or tortious interference actions, or a tort such as the intermittent and irregular nature of the complained of actions.

We hold that all of Texas Disposal's claims based on the 1998 Communications are time-barred because (1) Texas Disposal asserted them after the statute of limitations expired; (2) the claims do not relate back to its 1997 petition; and (3) the claims do not constitute a continuing tort. We overrule Texas Disposal's first subissue.[1]

Antitrust Claims

Texas Disposal complains in its second subissue that the district court improperly dismissed its anti-competitive claims under section 15.05(b) of the business and commerce code because the summary judgment record contained evidence of anticompetitive or predatory behavior and of a dangerous probability that Waste Management would achieve monopoly power in the San Antonio and Austin markets. *See* Tex. Bus. & Com. Code Ann. § 15.05(b) (West 2002). Waste Management asserts the *Noerr-Pennington* doctrine as an affirmative defense, urging that the

---

[1] Because we hold that any alleged defamation resulting from the publication of the 1998 Communication would be barred by limitations, we need not reach the Texas Disposal's issue of whether the Drenth Letter or Unsigned Memo, two of the 1998 Communications, are privileged under the "public interest" or "right to petition the government" exceptions to defamation.

doctrine immunizes Waste Management's actions.[2]  *See Video Int'l Prod., Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988).

It is unlawful for any person to attempt to monopolize any part of trade or commerce. *Id*.  A cause of action for attempted monopolization requires a showing that the defendant:  (1) engaged in predatory or anticompetitive conduct; (2) with a specific intent to monopolize; and (3) had a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 477, 456 (1993).  A party moving for summary judgment must conclusively prove all elements of its cause of action or defense as a matter of law.  Tex. R. Civ. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

Texas Disposal complains that the district judge erred when he found as a matter of law that Waste Management's conduct did not constitute predatory or anticompetitive conduct and that Waste Management's conduct did not create a dangerous probability that Waste Management would achieve monopoly power in the San Antonio and Austin markets.[3]  Texas Disposal does not appear to challenge the district court's finding that Waste Management lacked the necessary intent to monopolize and does not argue that we should infer the necessary intent from the Waste

---

[2] Under the *Noerr-Pennington* doctrine, parties who petition the government for governmental action favorable to them cannot be held liable under antitrust laws, even if their petitions are motivated by anticompetitive intent.  *Video Int'l Prod., Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988).  It confers immunity on any concerted effort to sway public officials regardless of the private citizen's intent.  *Bayou Flett, Inc. v. Alexander*, 234 F.3d 852, 859 (5th Cir. 2000).  The doctrine is a principle of constitutional law and applies to state law claims.  *RRR Farms, Ltd. v. American Horse Prot. Ass'n*, 957 S.W.2d 121, 127-29 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).

[3] The district judge granted a no-evidence summary judgment in favor of Waste Management on the grounds that Texas Disposal presented no evidence that Waste Management created a dangerous probability of achieving monopoly power in the relevant markets.

Management actions of which Texas Disposal complains. Thus, because Texas Disposal does not challenge the district court's finding that at least one element of the claim was not met, we hold that the trial court properly dismissed Texas Disposal's attempted monopoly claim and overrule Texas Disposal's second subissue. *See* Tex. R. Civ. P. 166a(c). We do not reach the issue of whether the *Noerr-Pennington* doctrine applies to immunize Waste Management's actions.

Tortious Interference with an Existing Contract

Texas Disposal complains in its third subissue that it was error for the trial court to dismiss its claims for tortious interference with existing and prospective contractual relations. Texas Disposal asserts that it had a viable contract with San Antonio in May 1995 and that due to Waste Management's interference, the execution of the San Antonio contract was unduly delayed and as a result, Texas Disposal suffered economic damages. We disagree.

The cause of action for tortious interference with an existing contract is based on the principle that a contract is a property right subject to protection from unwarranted interference. *See Raymond v. Yarrington*, 73 S.W. 800, 803 (Tex. 1903). Although a business is not protected from most forms of competition, it may have a superior right, by contract or otherwise, to be so protected in certain circumstances. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 717 (Tex. 2001). A cause of action for tortious interference will not lie in the absence of a contract. *S & A Marinas, Inc. v. Leonard Marine Corp.*, 875 S.W.2d 766, 768 (Tex. App.—Austin 1994, writ denied).

Binding and enforceable contracts are formed when an offer is made and accepted, when there is a meeting of the minds, and when the terms are sufficiently certain to define the parties' obligations. *See Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999,

14

pet. denied). The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and how they acted, not on their subjective state of mind. *Id.* If a trial court can determine conclusively that no contract existed, summary judgment is appropriate. *S & A Marinas, Inc.*, 875 S.W.2d at 768.

Texas Disposal asserts that the grant of summary judgment was error because Texas Disposal produced more than a scintilla of evidence that a contractual relationship existed between Texas Disposal and San Antonio when Waste Management interfered. Furthermore, Texas Disposal asserts that even absent a formal contract, Texas Disposal's and San Antonio's relationship had matured to a point where Waste Management had a legal duty not to interfere.

To prove that it had a contract with the City of San Antonio, Texas Disposal relies on an ordinance passed by the city council in May 1995 extending its disposal services contract. On December 5, 1996, the city council issued an ordinance that directed the city manager to execute an agreement with Texas Disposal, subject to the addition and modification of material terms. The contract was finally memorialized in writing on January 7, 1998.

The May 1995 ordinance authorized the city manager or his representative to execute a contract with Texas Disposal for waste disposal services for a term not to exceed thirty years and authorized payment for the services. The ordinance did not discuss the Starcrest facility, an essential part of the final agreement. The terms of the ordinance indicate that the city manager was authorized to engage in negotiations to execute a contract that would be similar to the previous Texas Disposal contract and would conform to San Antonio's waste disposal services request for proposal guidelines. The authorization to negotiate and execute a contract is not tantamount to expressing an

15

intent to be bound. *S & A Marinas, Inc.*, 875 S.W.2d at 768. Texas Disposal admits in its brief, "summary judgment evidence showed that by May 31, 1995, San Antonio had determined that Texas Disposal's proposal for private operation and use of Starcrest was the most competitive bid submitted. The City obligated itself *to negotiate further* only with Texas Disposal . . . to reach an agreement on privatizing Starcrest." (Emphasis added.) Accordingly, the May 1995 ordinance did not create a contract between Texas Disposal and San Antonio.

In the alternative, Texas Disposal argues that a contract existed when the city council issued its December 1996 ordinance authorizing the city manager to execute an agreement with Texas Disposal pursuant to the "Proposed Agreement with Texas Disposal to Operate Transfer Station" subject to the addition or modification of some material provisions. The ordinance required the city manager to further negotiate and refine the terms of the agreement to give San Antonio the first right of use of and access to the transfer facility, to acquire the power to limit services available to third parties, to acquire the power to change the composition of the oversight panel, to make the new contract independent of the old contract with Texas Disposal with respect to termination, and to add a term that would permit San Antonio to terminate the transfer station agreement for cause on account of a material breach. The ordinance also authorized the city council to veto any contract term that were materially different from the contract modifications listed in the ordinance.

The December 1996 ordinance is not evidence of a contract between San Antonio and Texas Disposal. On the contrary, the ordinance's language requiring the addition or modification of material terms affecting termination of the contract and San Antonio's use of the facility, and the clause that requires city council approval for contract terms that significantly differ from the

16

requirements set forth in the ordinance show at most San Antonio's continued interest in pursuing and negotiating a waste disposal contract with Texas Disposal.

To hold that the brief and cursory language of the ordinances was sufficient to form a contract would contravene public policy allowing governmental agencies to reconsider actions taken with respect to a contract not yet finalized. *See S & A Marinas, Inc.*, 875 S.W.2d at 768.

We hold as a matter of law that the May 1995 and December 1996 ordinance did not demonstrate that a contract existed between San Antonio and Texas Disposal, and thus, the district court did not err in dismissing Texas Disposal's action for tortious interference with an existing contract. We overrule Texas Disposal's third subissue.

Tortious Interference with Prospective Contractual Relationship

Although Texas Disposal was eventually awarded both the San Antonio and Austin contracts it sought, Texas Disposal claims in its fourth subissue that it is also entitled to damages related to alleged delays in obtaining the contracts caused by Waste Management's actions, under a tortious interference with prospective contractual relations theory. *See Baty v. Protech Ins. Agency*, 63 S.W.3d 841, 859 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 414-15 (Tex. App.—Waco 2001, pet. denied). Texas Disposal asserts that it was error for the district court to dismiss this claim on summary judgment. We disagree.

Although the supreme court has never enumerated the elements of a cause of action for tortious interference with prospective contractual relations, the elements of the tort seem to include: (1) there was a reasonable probability that the parties would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that *prevented the*

17

*relationship from occurring*; (3) the defendant acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of its conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *See Baty*, 63 S.W.3d at 860; *Ash*, 54 S.W.3d at 414-15 (emphasis added). Conduct that is merely "sharp" or unfair is not actionable. *See Baty*, 63 S.W.3d at 860; *Ash*, 54 S.W.3d at 414-15.

Because Texas Disposal was awarded both contracts it sought, Texas Disposal cannot prove its third element, that Waste Management's actions prevented the contracts from forming. Thus, the trial court properly dismissed the claim on summary judgment. *See* Tex. R. Civ. P. 166a(c); *Rhone-Poulenc*, 997 S.W.2d at 223.

Implicit in Texas Disposal's claim is an invitation to expand the doctrine of tortious interference with prospective business relationships to make actionable conduct that results in delaying the execution of a contract, even though the formation of a contract was not prevented. Delays caused by competitor conduct are inherent in the course of doing business, and enlarging the scope of tortious inference for prospective relationships to include delays would run afoul of the policy encouraging competition in the market. *See Ash*, 54 S.W.3d at 414 (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001))("Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations . . . ."). We decline to expand the scope of tortious interference with prospective business relationships to include conduct that results only in a delay of the execution of a contract. We overrule Texas Disposal's fourth subissue.

**Actual Malice**

In a cross point, Waste Management challenges the factual sufficiency of the jury's finding that Waste Management published the Action Alert with actual malice and argues that Texas Disposal did not meet its burden to show actual malice by clear and convincing evidence.

The record before us does not contain a notice of appeal filed by Waste Management. A party who seeks to alter the trial court's judgment or other appealable order must first file a notice of appeal. Tex. R. App. P. 25.1(c); *Quimby v. Tex. Dep't of Transp.*, 10 S.W.3d 778, 781 (Tex. App—Austin 2000, pet. denied). We dismiss Waste Management's cross point.

## CONCLUSION

We overrule all of the issues Texas Disposal has brought on appeal and dismiss the only cross point. Therefore, we affirm the judgment of the district court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   June 23, 2005