Opinion issued July 26, 2007


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00060-CV






DOUGLAS A. TERRY, D.D.S., DOUGLAS A. TERRY, D.D.S., INC., AND
DOUGLAS A. TERRY ENTERPRISES, INC., Appellants


V.


JOHN CHRISTIAN SCHIRO, D.D.S. AND SCHIRO-KLINE, L.L.P.,
Appellees






On Appeal from the 234th District Court

Harris County, Texas

Trial Court Cause No. 2005-57985






MEMORANDUM OPINION


 In this interlocutory appeal, appellants, Douglas A. Terry, D.D.S., Douglas A.
Terry, D.D.S., Inc., and Douglas A. Terry Enterprises, Inc. (collectively "Dr. Terry"),
appeal the trial court's order that denied their second motion to dismiss the causes of
action asserted by appellees, John Christian Schiro, D.D.S. and Schiro-Kline, L.L.P. 
In one issue on appeal, Dr. Terry argues that the trial court abused its discretion by
not dismissing the case.

 We affirm.

Background


 Dr. Schiro performed dentistry procedures on Lucille Zalud, Paula Stiles, and
Mindy Stiles. Because they were dissatisfied with Dr. Schiro's work, they obtained
a second opinion from Dr. Terry, who informed them that they had received
substandard medical care. (1) After Dr. Schiro discovered what Dr. Terry had been
telling these patients and prospective patients, he hired an attorney to investigate Dr.
Terry. In the course of the investigation, the attorney representing Dr. Schiro
employed private investigators to pose as potential patients for Dr. Terry. While
meeting with Dr. Terry, the investigators wore microphones and tape recorders so that
they could record their conversations with Dr. Terry. 

 Dr. Schiro filed suit against Dr. Terry on September 8, 2005, alleging causes
of action for libel and slander. Dr. Terry filed a general denial and asserted
affirmative defenses including public figure, truth, public health danger, witness
immunity, and peer review privilege. Dr. Terry later filed a motion to dismiss,
arguing that because Dr. Schiro's claims were health care liability claims and Dr.
Schiro had failed to file an expert report, the claims should be dismissed. (2) The trial
court denied Dr. Terry's first motion to dismiss. Dr. Terry also filed a petition for
writ of mandamus complaining of the trial court's order denying his motion to
dismiss, which was assigned to this Court. We denied Dr. Terry's petition without
opinion. See In re Terry, D.D.S., 01-06-00731-CV, 2006 WL 2506724 (Tex.
App.--Houston [1st Dist] Aug. 28, 2006, orig. proceeding). After we denied his
petition, Dr. Terry filed a petition for writ of mandamus in the Supreme Court of
Texas that was also denied. See In re Terry, D.D.S., No. 06-0818 (Tex. Oct. 20,
2006).

 On January 8, 2006, Dr. Terry filed a second motion to dismiss in the trial
court, arguing the same points that he had previously asserted in his first motion to
dismiss. The trial court denied his second motion to dismiss, and Dr. Terry now
brings this interlocutory appeal complaining of the trial court's order denying his
second motion to dismiss. 


Standard of Review


 Generally, we review a trial court's order on a motion to dismiss under an
abuse of discretion standard. Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,
46 S.W.3d 873, 877 (Tex. 2001). However, "to the extent resolution of this issue
requires interpretation of the statute itself, we review under a de novo standard." 
Buck v. Blum, 130 S.W.3d 285, 290 (Tex. App.--Houston [14th Dist.] 2004, no pet.);
Ponce v. El Paso Healthcare Sys., Ltd., 55 S.W.3d 34, 36 (Tex. App.--El Paso 2001,
pet. denied); Gomez v. Matey, 55 S.W.3d 732, 735 & n.2 (Tex. App.--Corpus Christi
2001, no pet.). Here, the order complained of states that the "Defendants . . . are not
health care providers against whom a health care liability claim was asserted, and
therefore no expert report need be filed within 120 days of the filing of this suit." We
shall review the statutory interpretation question presented by Dr. Terry's second
motion to dismiss de novo.

Health Care Liability Claim


 A health care liability claimant must file an expert report and curriculum vitae
within 120 days after filing a claim. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)
(Vernon Supp. 2006). If a required expert report has not been served by the 120-day
deadline, on proper motion by the defendant the trial court "shall" dismiss the action
with prejudice and award reasonable attorney's fees and court costs incurred by the
defendant. Id. § 74.351(b) (Vernon Supp. 2006). 

 The expert report requirements of section 74.351(b) apply to a patient's claims,
regardless of whether they are tort claims, when those claims come within the
statutory definition of a "health care liability claim," defined as:

a cause of action against a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted
standards of medical care, or health care, or safety or professional or
administrative services directly related to health care, which proximately
results in injury to or death of a claimant, whether the claimant's claim
or cause of action sounds in tort or contract. 


Id. § 74.001(a)(13) (Vernon 2005). 

 Artful pleading cannot avoid the requirements of section 74.351 when the
essence of the suit is a health care liability claim. Diversicare Gen. Partner, Inc. v.
Rubio, 185 S.W.3d 842, 851 (Tex. 2005) ("It is well settled that a health care liability
claim cannot be recast as another cause of action to avoid the requirements of the
[Medical Liability Insurance Improvement Act]."); Garland Cmty. Hosp. v. Rose, 156
S.W.3d 541, 543 (Tex. 2004); MacGregor Med. Ass'n v. Campbell, 985 S.W.2d 38,
40 (Tex. 1998). To determine whether a cause of action falls under chapter 74's
definition of a health care liability claim, we examine the claim's underlying nature. 
Garland Cmty. Hosp., 156 S.W.3d at 543 (citing Sorokolit v. Rhodes, 889 S.W.2d
239, 242 (Tex. 1994)). If the act or omission alleged in the complaint is an
inseparable part of the rendition of health care services, or if it is based on a breach
of a standard of care applicable to health care providers, then the claim is a health
care liability claim. Id. at 544 (citing Walden v. Jeffery, 907 S.W.2d 446, 448 (Tex.
1995)). One consideration in that determination may be whether proving the claim
would require the specialized knowledge of a medical expert. Id. at 544 (citing
Rogers v. Crossroads Nursing Serv., Inc., 13 S.W.3d 417, 419 (Tex. App.--Corpus
Christi 1999, no pet.)); see Diversicare Gen. Partner, 185 S.W.3d at 851. 

 In his first amended petition, Dr. Schiro alleged that:

[Dr. Terry] has made statements to prospective patients, or persons
accompanying prospective patients to Dr. Terry's offices and others, that
reflect poorly on Dr. Schiro's professional abilities as a dentist and his
commitment to a standard of care and treatment that is in the best
interest of patients.


. . . . 


[Dr. Terry's] statements were slanderous per se because they had a
tendency to injure [Dr. Schiro] in his profession as a dentist.


[Dr. Terry's] statements were entirely false. [Dr. Schiro] has never
engaged in irresponsible and unnecessary dentistry. Furthermore, [Dr.
Schiro] has performed numerous successful dental procedures and has
been regularly recognized for his commitment to the best interest of his
patients. 


Furthermore, [Dr. Terry] made the defamatory statements about [Dr.
Schiro] in bad faith and with malice. In this connection, [Dr. Schiro]
will show that [Dr. Terry] has feelings of ill will against [Dr. Schiro].
[Dr. Terry's] publication of slander per se was made with malice for the
reasons that it was made with the knowledge that it was false or with
such utter recklessness as to indicate a disregard of the consequences
and conscious indifference to the rights of [Dr. Schiro].


Additionally, Plaintiffs intend to show that Dr. Terry has made a public
disclosure of a private fact (or facts) which is offensive and
objectionable to a reasonable person and which is not a legitimate public
concern. Such disclosure has damaged Plaintiffs and they seek to
recover those damages from [Dr. Terry].


 Dr. Schiro's pleadings show that the underlying nature of his cause of action
is a claim for damages based on defamatory statements made by Dr. Terry that were
intended to injure Dr. Schiro's reputation. (3)
 Dr. Schiro's claim is not a cause of action
against Dr. Terry for treatment, lack of treatment, or other claimed departure from
accepted standards of medical care, or health care, or safety or professional or
administrative services directly related to health care. See Tex. Civ. Prac. & Rem.
Code Ann. § 74.001(a)(13). Thus, Dr. Schiro's suit is not inseparable from the
rendition of medical services that Dr. Terry provided. 

 Dr. Terry asserts that his privileged communications with his patients proves
that "[a]ny statement that falls under the privilege must be an inseparable part of the
rendition of health care services as a matter of law." Dr. Terry cites no authority for
this proposition, and we fail to see why the attachment of a privilege transforms
defamation claims into health care liability claims. (4) 

 Dr. Terry further argues that, because the supreme court prohibited a plaintiff
from recasting health care liability claims as Deceptive Trade Practices Act ("DTPA")
claims, Dr. Schiro should be precluded from recasting this suit as a defamation suit. 
See MacGregor Med., 985 S.W.2d at 40-41. We disagree with Dr. Terry's broad
reading of MacGregor. In MacGregor, the court stated, "Claims that a physician or
health care provider was negligent may not be recast as DTPA actions to avoid the
standards set forth in the Medical Liability and Insurance Improvement Act." Id. at
40. The court looked to the underlying nature of the claims and held that the "essence
of [the plaintiff's] DTPA claim is that MacGregor failed to provide quality medical
care as promised in its HMO literature. To successfully prove this claim, [the
plaintiff] must prove a breach of the applicable standard of care for health care
providers." Id. at 41. Contrary to Dr. Terry's argument, the supreme court did not
hold that a claimant could never assert a DTPA claim against a physician. In fact, the
court specifically stated that "if the alleged DTPA claim is not based on the
physician's breach of the accepted standard of medical care, section 12.01(a) does not
preclude suit for violation of the DTPA." Id. at 40 (quoting Sorokolit, 889 S.W.2d
at 242). Likewise, Dr. Schiro's claim for damages in the instant case is not based on
Dr. Terry's breach of the accepted standard of medical care that caused harm to his
patients, but rather on the alleged false statements that Dr. Terry allegedly made about
Dr. Schiro.

 Dr. Terry also relies on Murphy v. Russell, 167 S.W.3d 835 (Tex. 2005). In
Murphy, the court concluded that the plaintiff's pleadings "'all have to do with'
whether the administration of a general anesthetic under all the circumstances met the
standard of care for anesthesiologists." Id. at 839. Like MacGregor, Murphy is
factually distinguishable from the instant facts because, in Murphy, the plaintiff's
DTPA claims alleged that the defendant sedated her after he expressly represented
and warranted that he would not. Id. The court stated that these type of allegations
"all have to do with whether [the dentist's] selection of the surgical procedure and
performance of it met the standard of care for dentists in such circumstances." Id. 
Here, contrary to Murphy, the underlying nature of Dr. Schiro's claim for damages
to his reputation has no relevance to Dr. Terry's medical performance and whether
he met the standard of care. Nor could it, because none of Dr. Terry's patients were
alleging that Dr. Terry breached the standard of care in his medical performance.

 Thus, we conclude that Dr. Schiro's claims are not health care liability claims
and, therefore, the expert report requirements found in section 74.351(a)(13) do not
apply. Accordingly, the trial court properly denied Dr. Terry's second motion to
dismiss.

 We overrule Dr. Terry's sole issue on appeal.

Conclusion


 We affirm the trial court's order that denied Dr. Terry's second motion to
dismiss.


 



 Evelyn V. Keyes

 Justice

 

Panel consists of Chief Justice Radack and Justices Keyes and Higley.
1. Because of the substandard dentistry, the patients filed complaints with the board of
dentistry. See In the Matter of State Bd. of Dental Exam'rs v. John P. Schiro, D.D.S.
(Docket no. XXX-XX-XXXX). The patients also brought suit against Dr. Schiro for
medical negligence. See Lucille C. Zalud v. John Christian Schiro, D.D.S., No. 04-CV-137189 (Fort Bend County, Texas); Paula Stiles v. John Christian Schiro, D.D.S.,
No. 04-CV-139332 (Fort Bend County, Texas); Mindy Stiles v. John Christian Schiro,
D.D.S., No. 04-CV-139637 (Fort Bend County, Texas). At the trial, Dr. Terry served
as the patients' testifying expert. 
2. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon Supp. 2006).
3. A statement is defamatory if it tends to injure a person's reputation and thereby
expose the person to public hatred, contempt, ridicule, or financial injury or to
impeach any person's honesty, integrity, virtue, or reputation. See Tex. Civ. Prac.
& Rem. Code Ann. § 73.001 (Vernon 2005). There are two types of defamation: per
quod and per se. Moore v. Waldrop, 166 S.W.3d 380, 384 (Tex. App.--Waco 2005,
no pet.). Statements that are defamatory per quod are actionable only upon allegation
and proof of damages. Alaniz v. Hoyt, 105 S.W.3d 330, 345 (Tex. App.--Corpus
Christi 2003, no pet.); see also Time, Inc. v. Firestone, 424 U.S. 448, 459, 96 S. Ct.
958, 968 (1976) (holding that evidence of injury is required to support award of
compensatory damages in defamation case). A false statement will typically be
classified as defamatory per se if it injures a person in his office, profession, or
occupation, Alaniz, 105 S.W.3d at 346; charges a person with the commission of a
crime, Leyendecker and Associates, Inc. v. Wechter, 683 S.W.2d 369, 374 (Tex.
1984); imputes sexual misconduct, Moore v. Waldrop, 166 S.W.3d 380, 384 (Tex.
App.--Waco 2005, no pet.); or accuses one of having a loathsome disease, Bolling
v. Baker, 671 S.W.2d 559, 570 (Tex. App.--San Antonio 1984, no writ); see also
Alaniz, 105 S.W.3d at 345-46.


 The issue of whether statements are defamatory per se is generally a matter of law to
be decided by the court. West Tex. Utils. Co. v. Wills, 164 S.W.2d 405, 411 (Tex. Civ.
App.--Austin 1942, no writ). The trial court should consider the statements and
determine whether, even without proof of harm, the statements were so obviously
injurious to the plaintiff that, as a matter of law, the plaintiff is entitled to recover
damages. See Alaniz, 105 S.W.3d at 345. The court may, however, pass the inquiry
to the jury if it determines that an ambiguity exists about the meaning and effect of
the words or that a predicate fact question remains about whether the statements were
published or were false. Musser v. Smith Protective Serv., Inc., 723 S.W.2d 653, 655
(Tex. 1987); West Tex. Utils., 164 S.W.2d at 411.

4. Dr. Terry asserts that anything he says to patients that relates to the professional
services he renders is privileged. See Tex. Occ. Code Ann. § 258.102 (Vernon 2004)
(stating that communication between dentist and patient that relates to professional
service provided by dentist is privileged). Dr. Terry's privileged communication
defense relates to his defense to defamation, and not to whether his claims should be
classified as health care liability claims. Health care liability claims are claims in
which the liability derives from the allegedly substandard delivery of health care--not
from every aspect of a relationship to a health care provider or facility.