Deborah DOWNING, Appellant,

v.

Don BURNS and Sherry Burns, Appellees.

No. 14–09–00718–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 28, 2011.

Gregg M. Rosenberg, Houston, for appellant.

Anthony Laurent Laporte, Amy Loose–Mitchell, Corey Le'Allen Mills, Warren Cole, Lynn Kuriger Stanton, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices FROST and CHRISTOPHER.

## MAJORITY OPINION

TRACY CHRISTOPHER, Justice.

Before Deborah Downing resigned from her job as an assistant to realtor Don Burns, she copied several pages from the office policy and procedures manual she had written for him. After they learned of this, Don and his wife Sherry told several people that Downing stole from them, and that they would sue anyone who employed her if the material was not returned. When Downing was fired from her two subsequent jobs, she sued the Burnses for tortious interference and defamation, and they countersued for theft of trade secrets. The jury found in Downing's favor on all three claims, but the trial court entered judgment in her favor on only the tortious-interference and theft claims. Both sides appealed.

We conclude that the Burnses did not defeat Downing's recovery by conclusively proving their counterclaim for theft of trade secrets. Further, the evidence is legally and factually sufficient to support the jury's findings that the Burnses are liable to Downing for defamation and for tortious interference with contract; however, the record does not support the full

amount of damages awarded by the trial court on Downing's tortious-interference claim. Because the tortious-interference claim is not separable from the defamation and theft claims without unfairness to the parties, we reverse the judgment and remand the case for a new trial without addressing the remaining issues.

## I. BACKGROUND

For nearly two years, Deborah Downing was employed as Don Burns's assistant at his real-estate agency. Just before Downing resigned in late September 2006, she copied several pages from the policy and procedures manual she had written for the agency.

In October or November of 2006, Downing accepted two part-time jobs as the office manager for realtors Christine Fuentes and Sima Dalvandi. Both realtors were affiliated with a Keller Williams real-estate agency. Downing worked a total of about thirty hours per week for Fuentes and Dalvandi, and was paid separately by each. Dalvandi paid Downing $17.50 per hour, but Fuentes paid Downing no more than $12.50 per hour.

In mid-November of that year, the Burnses' attorney wrote to Downing, alleging that she had copied confidential, proprietary marketing plans and client care-packages. The attorney demanded that Downing return the material and informed her that the Burnses would sue her if she failed to do so. Downing responded that she had no such material, and she identified the four pages of material she had copied from the policy and procedures manual.

Also that autumn, Sherry learned from her friend Bernadette Hurley that Downing had begun working for realtors at a Keller Williams real estate agency. Sherry told Hurley that Downing had stolen the Burnses' policy and procedures manual, and by January of 2007, the story had reached Andy St. Jean, another officer manager at the Keller Williams agency. St. Jean telephoned Sherry, but was unable to reach her. Sherry returned St. Jean's call and repeated her allegation that Downing had stolen the Burnses' policy and procedures manual. Sherry also asked St. Jean if Downing, before accepting her current employment, notified others at the Keller Williams agency that the Burnses' attorney had demanded that she return the material. Sherry told St. Jean that the Burnses' attorney notified Downing that if she did not return the materials, the Burnses would sue Downing and anyone who employed her.[1]

Sherry's statements to St. Jean were repeated to Fuentes, one of Downing's employers. When Fuentes learned that the Burnses had threatened to sue anyone that employed Downing, Fuentes fired her. Fuentes testified that she did not believe the allegations of theft, but she fired Downing because she could not afford to be sued and "did not want to be a party to a frivolous lawsuit." Dalvandi terminated Downing's employment at the same time, but Downing offered no evidence at trial that Dalvandi was aware of the Burnses' allegations or their threat of litigation.[2] Downing remained unemployed until April 2008, when she began working part-time at a residential facility for people with Alzheimer's disease.

When Downing was leaving the Keller Williams agency, she told co-worker Eula-

---

1. The attorney's demand letter was offered into evidence, and it contains no threat of litigation against anyone other than Downing.

2. According to Downing, Dalvandi "was not involved in this."

lia Castillo of the Burnses' threats. As Don's friend and former employee, Castillo telephoned him about the allegations against Downing. Don told Castillo that Downing not only had taken a copy of his marketing secrets but also had stolen his clients' option checks. Castillo did not believe this and said there had to be some mistake, but Don ended the conversation.[3]

The same month that Downing was terminated, Fuentes and the Burnses attended a meeting of the Houston Association of Realtors, referred to by the witnesses as HAR. Fuentes introduced herself to Don, told him she had heard that the Burnses planned to sue anyone that hired Downing, and expressed the hope that she was not a party to any lawsuit. Don walked away from Fuentes, but sent Sherry to speak to her. Fuentes repeated to Sherry that she hoped the Burnses were not planning to sue her. Sherry responded by asking if Downing still worked for Fuentes, and when Fuentes said that Downing did not, Sherry said, "[W]ell, then you don't have to worry about being sued." Sherry also told Fuentes that Downing had stolen money or checks from the Burnses.

The rumor that Downing had stolen from the Burnses apparently spread to others in the industry. At luncheon meeting of the same professional association,[4] Mary Stuart approached Sherry to discuss Downing. As Sherry later testified, Stuart expressed disbelief, but Sherry told her, "yes, it's true."

Downing sued the Burnses for defamation and tortious interference with contract, and the Burnses asserted the affirmative defenses of justification and qualified privilege and counterclaimed for theft of trade secrets.[5] At trial, Downing offered into evidence her own response to a request for disclosure of the amount of her economic damages, together with a description of the method used to calculate such damages. She concluded that her known economic damages were $57,230.00. During closing argument, her attorney told the jury that the damages caused by the Burnses' defamation were the same as those caused by their tortious interference, and argued that the jury should answer the damage questions for each by referring to the calculation in this exhibit. The trial court refused to submit questions to the jury about the Burnses' affirmative defenses of justification and qualified privilege

A unanimous jury found that Downing did not commit theft of trade secrets and that the Burnses tortiously interfered with Downing's employment and defamed her. As compensation, the jury found that Downing was entitled to recover $100,000.00 from the Burnses—$57,230.00 for tortious interference and $42,770.00 for defamation.

The Burnses moved for judgment notwithstanding the verdict. As to the claim that they tortiously interfered with Downing's employment contract, the Burnses argued that their statements about Downing were privileged as a matter of law, and in any event, the evidence did not support the jury's damages finding on that claim. The Burnses argued that Downing could

---

3. At trial, another of Don's employees testified that immediately after Downing resigned, the Burnses learned that an option check had been associated with the wrong transaction and mailed to the wrong client, who mailed it back to Don's agency.

4. This may have been the same meeting at which Sherry and Don spoke to Fuentes; the record is not clear on this point.

5. The Burnses alleged a variety of other counterclaims, but abandoned them before the trial court submitted the case to the jury.

not recover on her defamation claim because (a) Downing admitted copying and retaining material from the policy and procedures manual, thereby proving the truth of the Burnses' allegedly defamatory statements; (b) there is no medical evidence that Downing suffered mental anguish; and (c) there is no evidence of any kind that the Burnses' statements damaged Downing's reputation. In response to Downing's motion for verdict on the judgment, the Burnses additionally argued that Downing could not recover on both her defamation and tortious-interference claims because such an award would be an impermissible double recovery. The trial court granted the Burnses' motion only as it pertained to the defamation claim and entered final judgment in Downing's favor on the tortious-interference claim, together with interest and costs. The Burnses immediately filed for bankruptcy protection, and Downing filed a motion for relief from the automatic stay. When the motion was granted, Downing appealed the trial court's partial grant of the Burnses' motion for judgment notwithstanding the judgment. After moving unsuccessfully for a new trial on legal and factual sufficiency grounds, the Burnses appealed the trial court's partial denial of their motion for judgment notwithstanding the verdict.

## II. Issues Presented

Downing contends that the trial court erred in partially granting the Burnses' motion for judgment notwithstanding the verdict, and she asks that we render judgment on both her defamation and tortious-interference claims in the full amount found by the jury. The Burnses ask that we render judgment in their favor on their counterclaim on the ground that they conclusively established that Downing stole trade secrets from them. They also argue that the evidence is legally and factually insufficient to support the jury's liability

and damage findings on Downing's tortious-interference claim. They further assert that the trial court abused its discretion in failing to submit questions to the jury concerning their affirmative defenses.

## III. Analysis

Before addressing those issues that would result only in remand, we must first consider the points on which we could render judgment. *Lone Star Gas Co., v. R.R. Comm'n of Tex.,* 767 S.W.2d 709, 710 (Tex.1989) (per curiam). If we accept the Burnses' argument that they conclusively proved theft of trade secrets, we could render a take-nothing judgment on Downing's tortious-interference claim. And if the Burnses are correct in arguing that the record does not support the jury's defamation-damages finding, then we could render judgment in their favor on that claim as well. We therefore begin our analysis with these issues, each of which requires us to review the legal sufficiency of the evidence.

Judgment without or against a jury verdict is proper only when the law does not permit reasonable jurors to decide otherwise. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005). We therefore review judgments notwithstanding the verdict for legal sufficiency of the evidence supporting the verdict, bearing in mind that it is the jury's province to evaluate witness credibility and determine the weight to attach to testimony. *Envtl. Procedures, Inc. v. Guidry,* 282 S.W.3d 602, 626 (Tex.App.-Houston [14th Dist.] 2009, pet. denied) (citing *City of Keller,* 168 S.W.3d at 819). We consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller,* 168

S.W.3d at 823, 827. If the evidence viewed in this light would enable reasonable and fair-minded people to find the challenged fact, then judgment notwithstanding the verdict is improper. *See id.* Thus, when the party who bore the burden of proof on an issue attacks the legal sufficiency of the evidence supporting the jury's adverse finding, that party must demonstrate that the evidence conclusively established the opposite of the jury's finding. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).

## A. Theft of Trade Secrets

■ The Burnses argue that the evidence—and in particular, Downing's admission that she took copies of several pages of the policy and procedures manual—conclusively establishes Downing's liability for theft. They therefore contend that the trial court erred in failing to grant their motion for judgment notwithstanding the verdict on this basis. We disagree.

The jury charge regarding the Burnses' theft counterclaim contained the following instruction:

"Theft" is defined as unlawfully appropriating property that is a trade secret. A person commits theft if without the owner's consent, he knowingly: (1) steals a trade secret or (2) communicates or transmits a trade secret. "Trade secret" means the whole or any part of any scientific or technical information, design, process, procedure, formula, or improvement that has value and the owner has taken measures to prevent from becoming available to persons other than those selected by the owner to have access for limited purposes.

■ By this instruction, the trial court charged the jury to determine Downing's liability under the Texas Theft Liability Act, which pertains only to theft of trade secrets. *See* TEX. CIV. PRAC. & REM.CODE § 134.001 *et seq.* (West 2011). To be a trade secret, "the information, design, process, formula or improvement must not only be a secret, but must also be generally unavailable to the public and it must give one who uses it an advantage over competitors that do not know of or use the trade secret." *See McGowan v. State,* 938 S.W.2d 732, 738 (Tex.App.-Houston [14th Dist.] 1996), *aff'd sub nom. Weightman v. State,* 975 S.W.2d 621 (Tex.Crim.App.1998) (en banc). When determining whether information constitutes a trade secret, courts consider factors such as (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of the measures taken to guard the information's secrecy; (4) the information's value to the owner and his competitors; (5) the amount of effort or money the owner expended to develop the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *In re Bass,* 113 S.W.3d 735, 739 (Tex.2003) (citing RESTATEMENT OF TORTS § 757 cmt. B (1939) and RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39 cmt. d (1995)).

On this record, a reasonable jury could find that Downing retained copies of only four pages from the manual, and that these pages contained no trade secrets. One of these pages contains instructions for adding a picture to an email template and saving the template. One page contains instructions for purchasing postage online from the United States Postal Service, together with Don's password for that website. The remaining two pages contain step-by-step instructions for accessing the website of the Houston Association of Realtors and the website of a company identified as Centralized Showing Service,

together with Don's password for each of these sites.

■ Turning first to the information other than Don's passwords, the Burnses did not establish that the steps to access these websites or to attach a template to an email were secret. Sherry considered the policy and procedures manual as a whole to be confidential, but of these four pages, Sherry identified only the passwords as confidential. Downing testified that the Burnses never told her the manual was confidential; the material is not marked as confidential; and she was not asked to sign any confidentiality agreements. Castillo, who was formerly employed by the Burnses and was familiar with the policy and procedures manual, testified that it contained no confidential information and that the Burnses took no steps to protect the material. Both Downing and Castillo testified that the information in the manual was generally known in the industry. Such information is not eligible for trade-secret protection. *See Gonzales v. Zamora,* 791 S.W.2d 258, 264 (Tex.App.-Corpus Christi 1990, no writ).

As for Don's passwords, the record shows that all of Don's employees had access to them. Some of the employees took the manual home, and some even had copies of it on their personal computers. The jury heard evidence that a couple of days after Downing resigned, the Burnses changed the passwords when another of Don's employees told the Burnses that Downing had copied the policy and procedures manual. The Burnses offered no evidence of the time, effort, or cost expended in developing the passwords, and no evidence that a competitor who possessed copies of the passwords Don used to access these websites in September 2006 would have an advantage over someone who did not have that information.

The Burnses also contend that "because the trial court had ruled that the pages contained trade secrets, the theft of a trade secret was established as a matter of law." In support of this argument, the Burnses cite to the trial court's statements in the record expressing the view that passwords are trade secrets or protected information. These statements explain two of the trial court's rulings, but are not themselves rulings or findings to be considered by this court. This is apparent when the statements are considered in context. Downing moved for a directed verdict on the ground that there was no evidence to support the claim that she had stolen trade secrets, and the trial court denied the motion, stating, "Certainly in this day and age passwords are protected information. The court recognizes that as such and considers that to be a trade secret, *so your motion as to that part of it is denied.*" (emphasis added). Downing then objected on no-evidence grounds to submission of a theft question to the jury, and the trial court overruled that objection for the same reason. The Burnses, however, did not move for a directed verdict on their theft counterclaim. Moreover, the trial court did not grant a partial directed verdict sua sponte, but included the Burnses' theft issue in the jury charge without objection from the Burnses. Thus, despite these isolated statements on the record, the trial court treated the question of whether Downing knowingly stole trade secrets as a question of fact to be decided by the jury.[6]

6. The trial court further stated, "As to the password information, I do make a finding that that is protected information." This is not a "finding" as that term is used in Texas Rules of Civil Procedure 296–299a. Such findings are made only in connection with issues that are tried without a jury, and the

In sum, the Burnses did not conclusively prove that Downing knowingly stole trade secrets. We therefore conclude that the trial court did not err in denying their request for judgment notwithstanding the verdict as to that claim.

## B. Defamation

A trial court may grant a motion for judgment notwithstanding the verdict if no evidence supports the findings on which the jury relied. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 77 S.W.3d 253, 268 (Tex.2002). We review such a judgment by viewing all the evidence in the light most favorable to the jury's finding, and reverse if more than a scintilla of competent evidence supports the finding. *Id.*

 The dispositive arguments on this issue turn on the distinction between statements that are defamatory *per quod* and those that are defamatory per se. *See Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 501 (Tex.App.-Houston [14th Dist.] 2008, pet. denied). To recover for defamation *per quod*, a plaintiff must prove both the existence and amount of damages. *Id.* But in cases involving defamation per se, "damages are presumed to flow from the nature of the defamation itself; thus, such an action can be sustained even without specific proof of the existence and amount of harm." *Id.*

 An oral statement is defamatory per se only if it falls within one of the following categories: (1) imputation of a crime; (2) imputation of a loathsome disease; (3) injury to a person's office, business, profession, or calling; or (4) imputation of sexual misconduct. *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex.App.-Corpus Christi 1997, writ denied). If the jury finds that the defendant

made the allegedly defamatory statement about the plaintiff, and the statement is defamatory per se, then the factfinder may presume that the statement injured the plaintiff's reputation. *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex.2002). When the presumption applies, the plaintiff is entitled to recover general damages, such as for loss of reputation and mental anguish. *Id.* At a minimum, the plaintiff in such a case is entitled to nominal damages. *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 581 (Tex.App.-Austin 2007, pet. denied) (citing *Bentley*, 94 S.W.3d at 604). If the statement is only defamatory *per quod*, then the plaintiff must prove the existence and amount of damages. *Id.* at 580.

Downing contends that because Don's statement to Castillo that Downing stole clients' option checks is defamatory per se, legally sufficient evidence supports the jury's liability finding, and thus, the trial court erred in granting the Burnses' motion for judgment notwithstanding the verdict as to her defamation claim. We agree.

 The Burnses' statements that Downing stole from them and from their clients fall within the categories of statements that are defamatory per se. *See Gray*, 941 S.W.2d at 329 (imputation of a crime is defamatory per se); *see also Bradbury v. Scott*, 788 S.W.2d 31, 38 (Tex. App.-Houston [1st Dist.] 1990, writ denied) (a statement that an employee was dishonest in his dealings with his employer is defamatory per se because it falls within the general classification of "words that affect a person injuriously in his profession or occupation"). And because the statements are defamatory per se, general damages are presumed. *See Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369,

Burnses' theft counterclaim was decided by a jury.

374 (Tex.1984) (op. on reh'g) ("The law presumes a statement which is libelous per se defames a person and injures his reputation.");[7] *see also Bentley*, 94 S.W.3d at 587 (defining "defamatory" as "injurious to reputation."). The Burnses therefore are liable to Downing for general damages, even in the absence of any evidence of harm. The amount to award for harm to the plaintiff's reputation lies within the jury's discretion. *Bolling v. Baker*, 671 S.W.2d 559, 570 (Tex.App.-San Antonio 1984, writ dism'd w.o.j.). At a minimum, the plaintiff is entitled to a nominal sum, but is not limited to that amount, and the jury may choose to award damages that are "substantial." *W. Tex. Utils. Co. v. Wills*, 164 S.W.2d 405, 408 (Tex.Civ.App.-Austin 1942, no writ).

■■■■■ The Burnses argue that Downing cannot recover for defamation per se because in her pleadings she alleged only "defamation"; however, they cite no authority in support of this contention. *But see, e.g., Bentley*, 94 S.W.3d at 576, 582 (plaintiff asserted claim for defamation; trial court did not err in granting motion for directed verdict in that the statements were defamatory per se);[8] *Salinas v. Townsend*, No. 13–09–00421–CV, 2011 WL 61844, at *4, *9 (Tex.App.-Corpus Christi Jan. 6, 2011, no pet. h.) (plaintiff alleged defamation; court affirmed trial court's conclusion that the statement was defamatory as a matter of law). A statement that defames a private individual necessarily is either defamatory per se or defamatory *per quod*, and the term "defamation" does not imply defamation *per quod* any more than it implies defamation per se. In most cases, the question of whether a statement is defamatory per se or defamatory *per quod* is instead a matter of law to be decided by the court. *Terry v. Schiro*, No. 01–07–00060–CV, 2007 WL 2132461, at *3 n. 3 (Tex.App.-Houston [1st Dist.] July 26, 2007, pet. denied) (mem. op.). Moreover, defamation per se and defamation *per quod* are not separate causes of action; the distinction between them instead " 'is based on a rule of evidence, the difference between them lying in the proof of the resulting injury.' " *Goree v. Carnes*, 625 S.W.2d 380, 384 (Tex.App.-San Antonio 1981, no writ) (quoting 36 TEX. JUR. 2d *Libel and Slander* § 2).

■■■■■ The Burnses additionally argue that Downing cannot recover for defamation per se because the jury was charged only with defamation *per quod*. In support of this argument, they cite *Hines*, in which we held that the trial court charged the jury only on defamation *per quod*, and we did not apply the damage presumption applicable to defamation per se. Here, as in *Hines*, the defamation-damage question in the charge did not include an instruction that damages were presumed. *Id.* at 501. Unlike the case before us, however, the plaintiff in *Hines* never argued that the presumption of general damages from defamation per se applied. *See id.* Further, the plaintiff in *Hines* also requested and received economic damages for the defamation claim, and economic damages are not general damages which can be presumed to flow from defamation per se. *Compare id.* at 501–02 *with* 28 TEX. JUR.3D *Damages* § 161 (West 2011) (explaining

---

7. "Libel" is simply a defamatory statement published in a writing or other graphic form. *See* TEX. CIV. PRAC. & REM.CODE § 73.001. The same defamatory statement would be referred to as "slander" if communicated orally. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex.1995).

8. Although the plaintiff presented evidence of the extent of his mental anguish, the Texas Supreme Court pointed out that the statements were defamatory per se.

that defamation per se implies general damages, not special damages). In contrast, the trial court did not instruct the jury in this case to consider or award economic damages for defamation.[9] Because the trial court did not charge the jury to determine Downing's economic damages from defamation,[10] the jury's answers do not show that Downing—unlike Hines—was awarded damages that could not have been presumed. We therefore conclude that the trial court erred in granting the Burnses' motion for judgment notwithstanding the verdict with regard to the defamation claim.

## C. Tortious–Interference Liability

■ The Burnses offer two reasons for their assertion that the evidence is legally insufficient to support the finding that they tortiously interfered with Downing's employment. First, they point to evidence that Sherry telephoned Andy St. Jean only after St. Jean left a message asking Sherry to call, and that Sherry's statements to St. Jean were made in answer to St. Jean's questions. But the Burnses cite no authority that such evidence is inconsistent with liability for tortious interference. This argument therefore is waived. *See* Tex.R.App. P. 38.1(i).

Citing *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686 (Tex.1989), they next state that the evidence of liability is legally insufficient because they did not "direct" Downing's subsequent employers to fire her. Their reliance on *Sterner* is misplaced. In that case, the defendant did not challenge the legal sufficiency of the evidence supporting the tortious-interference claim, *see id.* at 688, but argued that its interference was justified because it did so in the bona fide exercise of its own rights. *Id.* at 691. The court held that the defendant did not conclusively establish its affirmative defense because there was evidence that the defendant premises owner directed the plaintiff's employer, an independent contractor working on the premises, to fire the plaintiff. *Id.* Although the court held that such evidence prevented the defendant from conclusively proving its affirmative defense, it did not hold that such "direction" is an element of the tortious-interference cause of action. *See id.*

Here, Sherry admits she told St. Jean that if Downing did not return the allegedly stolen policy and procedures manual, then the Burnses would sue anyone that employed her. Fuentes testified without contradiction that she fired Downing only to avoid this threatened litigation, and Downing presented evidence that the termination harmed her financially. Because we conclude that this evidence is legally sufficient to support the jury's liability finding, we hold that the trial court did not err in denying this portion of the Burnses' motion for judgment notwithstanding the verdict. *See Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 207 (Tex.2002) (explaining that a successful claim of tortious interference with an existing contract requires proof that the defendant willfully and intentionally interfered with an existing contract, proximately causing the plaintiff actual damage or loss).

---

**9.** The jury was instructed to "[c]onsider the following elements of damages, if any, and none other," but no elements of damages were listed. *But cf.* Tex. Civ. Prac. & Rem.Code § 41.008(a) (West 2008 & Supp. 2009) ("[T]he trier of fact must determine the amount of economic damages separately from the amount of other compensatory damages.");

*Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 817 (Tex.1997) (noting that a charge that fails to instruct the jury on the proper measure of damages is fatally defective). The Burnses, however, did not object to this aspect of the charge.

**10.** The Burnses did not object to the question.

## D. Tortious–Interference Damages

■ In closing argument, Downing's attorney urged the jury to find that the Burnses' tortious interference with Downing's subsequent employment cost her $57,230.00 in lost wages. In support of that argument, Downing's counsel relied on an exhibit consisting of Downing's answer to a request for disclosure concerning her damages. The exhibit is based on the erroneous assumption that Downing was working 40 hours per week at a rate of $17.50 per hour before the Burnses' tortious interference. In the exhibit, Downing described her damage model, beginning with the representation that she "made $17.50/hr @ Keller Williams equaling to $700.00/week, $3,010.00/month and $36,120.00/yr." [11] The rate of $3,010.00 per month was then multiplied by 23, said to be the "number of months since Plaintiff's employment ended with Keller Williams," to arrive at the figure of $69,230.00. From that amount, Downing deducted $3,500.00 she received in unemployment benefits and $8,500.00 she earned from subsequent employment, arriving at a total of $57,230.00—the very figure awarded by the jury on her tortious-interference claim.

■ But the record does not support the full amount of these damages. Downing testified that she was working only about 30 hours per week. And although she presented evidence that Fuentes fired her due to the Burnses' tortious interference, Fuentes was only one of Downing's two employers. Downing also worked for Sima Dalvandi. Both Fuentes and Dalvandi were affiliated with the Keller Williams agency, but the testimony is uncontroverted that Downing worked for these individuals and not for the agency. There is no evidence as to the number or proportion of hours she worked for each employer, but it is undisputed that each employer paid Downing a different rate. Fuentes paid Downing no more than $12.50 per hour, and Downing was compensated for some of the thirty hours she worked each week at this lower rate. And although there is evidence that Dalvandi paid Downing $17.50 per hour, there is no evidence of the reason Dalvandi terminated Downing's employment. Thus, the evidence of the extent of Downing's economic damages from the Burnses' tortious interference shows no more than that she was terminated from a job that she performed less than thirty hours per week and for which she was paid no more than $12.50 per hour. The amount awarded by the jury far exceeds this. The excess cannot be sustained as an award of non-economic damages, because Downing presented no evidence that the Burnses' tortious interference caused her any harm other than a temporary loss of income. Unlike damages for defamation per se, damages from tortious interference are not presumed but instead must be proved.

■ We therefore agree with the Burnses that no evidence supports the full amount of damages awarded on Downing's tortious-interference claim. When the evidence supports only a portion of the damages awarded, but the record does not allow us to determine the amount of remittitur to suggest, we must remand for a new trial. *Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex.2007).

## E. Scope of Remand

■ We are left, then, with the question of the proper scope of the remand. Because the record does not support the

---

11. If Downing earned $17.50 per hour, her weekly wage would be $700.00 only if she worked 40 hours per week.

tortious-interference damages awarded and we cannot order a separate trial solely on unliquidated damages when liability is contested, the Burnses' liability for tortious-interference must be retried. *See* Tex.R.App. P. 44.1(b). If the tortious-interference claim and the defamation claims are "separable without unfairness to the parties," then we can remand the case with instructions for the trial court to sever the two claims, enter judgment in accordance with the verdict on the defamation claim, and retry the tortious-interference claim. We conclude however, that as litigated by the parties, Downing's defamation claim and the Burnses' theft counterclaim are so interwoven with the tortious-interference claim that they are not separable without unfairness.

■ On appeal, Downing asks us to render judgment on her defamation claim because, according to Downing, the jury's findings of defamation liability and damages are based on Don's statement to Castillo that Downing stole his clients' checks. This statement was made after Fuentes fired Downing, and thus, it could properly be separated from the tortious-interference claim. The problem with this argument is that the record does not identify the basis for the jury's findings. Downing presented evidence of at least six statements that, if made falsely and negligently, were defamatory. These included Sherry's statements to Bernadette Hurley, Andy St. John, Mary Stuart, and Christine Fuentes that Downing stole trade secrets or marketing material; Sherry's statement to Fuentes that Downing stole money or checks; and Don's statement to Eulalia Castillo that Downing stole clients' checks. Each of the allegedly defamatory statements could have been litigated as a dis-

tinct claim with its own damages. *See Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 394 (Tex.App.-Houston [1st Dist.] 1993, writ dism'd w.o.j.) ("Each distinct publication of slander inflicts an independent injury from which a slander cause of action may arise."). But Downing did not choose to do so. The jury instead was given a single defamation-liability question and a single defamation-damage question, and neither question was identified with any particular statement. As a result, we cannot tell whether the jury's defamation findings were based on matters that could be tried separately from the tortious-interference claim without unfairness to the parties.

It also would be unfair to separate the Burns's theft allegations from the tortious-interference claim. Although styled as a counterclaim, the Burnses ultimately sought no damages for Downing's alleged theft of trade secrets. In effect, this "claim" was the Burnses' defense to Downing's tortious-interference claim and to some of the statements on which her defamation claim is based. If Downing did knowingly steal trade secrets, then Sherry's statements to Andy St. John to that effect would not be defamatory, and the Burnses would have established justification as an affirmative defense to Downing's tortious-interference claim. On the other hand, if Sherry used defamation to tortiously interfere with Downing's employment by Fuentes,[12] then the Burnses cannot rely on the affirmative defenses of justification or privilege. *See Prudential Ins. Co. v. Fin. Review Servs.*, 29 S.W.3d 74, 81 (Tex.2000) (explaining that because there is no privilege or justification to defame another, privilege and justification are not available defenses to a claim that

---

12. Downing introduced no evidence that Don Burns tortiously interfered with her employ-

ment.

the defendant used defamation to tortiously interfere with the plaintiff's contract).

In sum, evidence of defamation was used to support Downing's tortious-inference claim and rebut the Burnses' affirmative defenses; evidence of theft was used to support the Burnses' affirmative defense to the tortious-interference claim. Because these issues are not separable without unfairness to the parties, we reverse the judgment and remand all of the claims for a new trial.

## IV. Conclusion

For the foregoing reasons, we reverse the judgment and remand the case.

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting.

There is no legally sufficient evidence to show that the plaintiff sustained any defamation damages under the unobjected-to jury charge. Therefore, the trial court properly granted judgment notwithstanding the verdict on the defamation claim. Contrary to binding precedent, this court finds error in the trial court's ruling based upon a legal theory not submitted in the jury charge, and this court remands the defamation claim for a new trial. This court should affirm the trial court's judgment notwithstanding the verdict on the defamation claim.

**I. The trial court correctly granted judgment notwithstanding the verdict on the defamation claim because there is no legally sufficient evidence that Downing sustained any defamation damages under the damages question submitted to the jury.**

In her sole issue as appellant, appellant/cross-appellee Deborah Downing as-serts that the trial court erred in granting judgment notwithstanding the verdict (hereinafter "JNOV") as to Downing's defamation claim. Downing requests that this court reverse this JNOV and render judgment on the jury's verdict awarding her $42,770 in defamation damages. In their motion for JNOV, appellees/cross-appellants Don and Sherry Burns asserted that the evidence is legally insufficient to support the jury's answer to Question 4 regarding defamation damages. The trial court agreed and rendered a take-nothing judgment, notwithstanding the jury's verdict, as to the defamation claim.

**A. This court must review the sufficiency of the evidence of defamation damages under the question submitted to the jury.**

It is significantly easier to recover damages based upon defamation *per se* than upon defamation *per quod*. *See Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 501 (Tex.App.-Houston [14th Dist.] 2008, pet. denied). Under a defamation *per se* theory, damage to reputation and mental anguish are presumed to have been caused by the defamatory statements; therefore, under defamation *per se*, the plaintiff can recover damages for mental anguish and for injury to reputation without any evidence that the plaintiff suffered such damages or that such damages were caused by the defamatory statements. *See id.* Under a defamation *per quod* theory, the plaintiff has the burden of proving that the defamatory statements caused all damages sought, as well as the amount of these damages. *See id.* at 501, 504–05. But, to obtain the advantages of defamation *per se*, the trial court must submit this theory in the jury charge. *See id.*

In the case under review, Downing did not assert in her petition that the Burnses'

statements were defamatory *per se.*[1] At no time before the jury's verdict did Downing assert that, as a matter of law, any statement was defamatory *per se* or that there was a fact issue as to whether any statement was defamatory *per se.* Prior to the charge being submitted to the jury, Downing did not request that the jury be charged on whether any statement was defamatory *per se,* and the jury was not charged on this issue. If a statement is defamatory *per se,* the jury assesses mental anguish damages and damages for injury to reputation without any requirement of evidence that the plaintiff suffered such damages or that such damages were caused by the defamatory statements. *See id.* In the jury charge in the case under review, the trial court, without objection, asked the jury to find the sum of money, if any, that would compensate Downing for her damages, if any, that were proximately caused by the defamatory statements found by the jury. Under the jury charge, these damages were not presumed and had to be proved by a preponderance of evidence. In his closing arguments, Downing's counsel told the jury that there was no evidence that Downing suffered any mental anguish and that the jury should assess damages for defamation based only upon Downing's alleged temporary loss of income as a result of Christine Fuentes's termination of Downing's employment. Nominal damages are also available in cases of defamation *per se,* but Downing has not requested or obtained any award of nominal damages either in the trial court or on appeal.

To the extent Downing could have taken advantage of the benefits of defamation *per se,* she failed to do so, and this court must review the sufficiency of the evidence to support the jury's finding of defamation damages under the charge given to the jury, even if the charge did not correctly state Texas law.[2] *See Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000) (holding that appellate court could not review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party objected to the charge on this ground or requested that the jury be charged using this standard); *Hines,* 252 S.W.3d at 501–05 (reviewing defamation damages under defamation *per quod* charge submitted to the jury and requiring proof of damages caused by the allegedly defamatory statements); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.,* 201 S.W.3d 272, 283–86 (Tex.App.-Houston [14th Dist.] 2006, no. pet.) (reviewing sufficiency of evidence based on unobjected-to jury instruction and rejecting various arguments based on different legal standards).

The majority's sole basis for reversing the trial court's JNOV is that some of the statements were defamatory *per se* and

1. In this opinion it is presumed that, under a liberal construction of Downing's petition, it was sufficient to allege defamation *per se.* Nonetheless, there is no allegation that the statements were defamatory *per se* or that damages should be presumed.

2. After the Burnses sought judgment notwithstanding the verdict and asserted that the evidence *is* legally insufficient *to* support the jury's finding of defamation damages, Downing argued for the first time that the statements were defamatory *per se.* Downing has made these arguments on appeal as well, but these arguments are too late to have any effect on how this court reviews the jury's finding. *See Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.,* 201 S.W.3d 272, 283–86 (Tex.App.-Houston [14th Dist.] 2006, no. pet.). Though the appellees in *Hines* did not argue a defamation *per se* theory after the jury verdict or on appeal, if they had done so it would not have changed this court's analysis. *See Osterberg,* 12 S.W.3d at 55; *Hines,* 252 S.W.3d at 501–04; *Hirschfeld Steel Co.,* 201 S.W.3d at 283–86.

therefore Downing could have been awarded $42,770 as presumed damages under a defamation *per se* theory. *See ante* at pp. 11–14. But this court should not inquire into what findings the jury could have made; instead, this court must review the sufficiency of the evidence to support the finding that the jury actually made. *See Osterberg,* 12 S.W.3d at 55; *Hines,* 252 S.W.3d at 501–05; *Hirschfeld Steel Co.,* 201 S.W.3d at 283–86. This finding was under a defamation *per quod* theory, under which Downing had the burden to prove that the defamatory statements proximately caused the damages found by the jury. This court cannot reverse the trial court's JNOV unless it concludes that the evidence is legally sufficient to support a finding of some damage under this question.[3]

**B. Under the question submitted to the jury, the evidence is legally insufficient to prove that Downing sustained any defamation damages.**

The trial court instructed the jury to answer the following question regarding defamation damages if the jury answered "yes" to the defamation liability question:

**Question No. 4**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Deborah Downing for her damages, if any, proximately caused by Don Burns/Sherry Burns defaming [sic] her?

"Proximate Cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have reasonably foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Consider the following elements of damages, if any, and none other.

Do not add any amount for interest on damages, if any.

Answer in dollars and cents for damages, if any that were sustained in the past[.]

In response to this question, the jury found that Downing had proved by a preponderance of the evidence $42,770 in damages. The trial court concluded that the evidence at trial is legally insufficient to support this finding. When reviewing the legal sufficiency of the evidence, this court considers the evidence in the light most favorable to the challenged finding and indulges every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005). This court must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. This court must determine whether the evidence at trial would enable reasonable and fair-minded people to find that the Burnses' defamatory statements proximately caused Downing damage. *See id.* The jury is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

**1. The evidence is legally insufficient to support a finding that the defamatory statements proximately caused Downing mental anguish.**

In his closing argument, Downing's counsel correctly told the jury that "I

---

**3.** The majority correctly points out that the damage question was not limited to a specific type of damages, such as mental anguish or damage to reputation. But this general nature does not change the requirement in the question that Downing prove damages proximately caused by the defamatory statements.

didn't put on one shred of testimony about mental anguish." Considering the evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, the evidence at trial would not enable reasonable and fair-minded people to find that the Burnses' defamatory statements proximately caused Downing mental anguish. *See Service Corp. Intern. v. Guerra*, 348 S.W.3d 221, 231 (Tex.2011) (holding evidence legally insufficient to support award of mental anguish damages); *Hines*, 252 S.W.3d at 504–07 (holding evidence was legally insufficient to support jury's finding that allegedly defamatory statements caused mental anguish damages).

**2. The evidence is legally insufficient to support a finding that the defamatory statements proximately caused Downing damage to her reputation.**

Downing does not cite to any trial evidence that she claims raises a fact issue as to whether the Burnses' statements proximately caused damage to her reputation. A review of the record reveals none. Downing did not testify that these statements caused damage to her reputation. Fuentes testified that she terminated Downing's employment based upon the Burnses' threat to sue anyone who hired Downing, but Fuentes also stated that she did not believe the statements that Downing had committed theft. There is no evidence that Downing's other employer (Sima Dalvandi) was aware of the defamatory statements. Eulalia Castillo (Downing's former co-worker) testified that Don Burns told her that Downing had stolen his clients' option checks but that she (Castillo) did not believe this statement. Considering the evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, the evidence at trial would not enable reasonable and fair-minded people to find that the Burnses' defamatory statements proximately caused damage to Downing's reputation. *See Hines*, 252 S.W.3d at 504–07 (holding evidence was legally insufficient to support jury's finding that allegedly defamatory statements caused damage to plaintiffs' reputations).

**3. The evidence is legally insufficient to support a finding that the defamatory statements proximately caused Downing any loss of income.**

The only damages that Downing sought from the jury were economic damages based on temporary lost income resulting from Fuentes's termination of Downing's employment.[4] But Fuentes testified that she did not believe the statements that Downing had committed theft and that she terminated Downing's employment because of the Burnses' threat to sue anyone who hired Downing. Considering the evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, the evidence at trial would not enable reasonable and fair-minded people to find that the Burnses' defamatory state-

---

4. Downing's other employer (Sima Dalvandi) also terminated Downing's employment, but there is no evidence that Dalvandi was aware of the Burnses' defamatory statements or their threats to sue anyone who hired Downing.

ments proximately caused Downing any lost income. *See Hines,* 252 S.W.3d at 504–07 (holding evidence was legally insufficient to support jury's finding that allegedly defamatory statements caused plaintiffs economic damage). Therefore, while the evidence is sufficient to support a finding that the Burnses' tortious interference proximately caused Downing damage, there is no legally sufficient evidence to support a finding that any of Downing's lost income or other economic damage was proximately caused by the Burnses' defamatory statements.

As shown above, under the applicable standard of review, the evidence is legally insufficient to support a finding by the jury of any damage under question 4 of the jury charge. Accordingly, this court should overrule Downing's sole issue as appellant and affirm the trial court's JNOV as to Downing's defamation claim.

## II. Even if the trial court had erred in granting judgment notwithstanding the verdict on the defamation claim, this court could not remand for a new trial on the defamation claim.

The majority concludes that the trial court erred in granting a JNOV as to the defamation claim, reverses this judgment, and remands for a new trial on the defamation claim. Even if the trial court had erred as the majority concludes, remanding for a new trial is not a proper remedy for such an error. Texas Rule of Appellate Procedure 38.2(b) states as follows:

(b) *Cross–Points.*

(1) Judgment Notwithstanding the Verdict. When the trial court renders judgment notwithstanding the verdict on one or more questions, the appellee must bring forward by cross-point any issue or point that would have vitiated the verdict or that would have prevented an affirmance of the judgment if the trial court had rendered judgment on the verdict. Failure to bring forward by cross-point an issue or point that would vitiate the verdict or prevent an affirmance of the judgment waives that complaint. Included in this requirement is a point that:

(A) the verdict or one or more jury findings have insufficient evidentiary support or are against the overwhelming preponderance of the evidence as a matter of fact; or

(B) the verdict should be set aside because of improper argument of counsel.

(2) When Evidentiary Hearing Needed. The appellate court must remand a case to the trial court to take evidence if:

(A) the appellate court has sustained a point raised by the appellant; and

(B) the appellee raised a cross-point that requires the taking of additional evidence.

Tex.R.App. P. 38.2(b). The purpose of this rule is to require a final disposition of the case by the appellate court based upon the appellate record, in cases in which a JNOV is erroneously rendered by the trial court, and to order a remand only as to an appellate cross-point that requires the taking of additional evidence. *See id.; Swink v. Alesi,* 999 S.W.2d 107, 112 (Tex.App.-Houston [14th Dist.] 1999, no pet.). On appeal, the Burnses have not asserted any cross-points; rather, they have asserted various arguments as to why the trial court did not err in granting a JNOV. In the absence of any cross-points, the Burnses have waived any other objections to rendition of judgment on the jury's defamation findings. *See* Tex.R.App. P. 38.2(b). Therefore, if the trial court erred in granting a JNOV as to the defamation claim, then judgment must be rendered against the Burnses in the principal amount of

$42,770, based on the jury's verdict. *See id.; Swink*, 999 S.W.2d at 112. Though this court could remand to the trial court for calculation of interest and rendition of judgment based upon the jury's defamation findings, this court cannot remand for a new trial on the defamation claim. *See Holman Street Baptist Church v. Jefferson*, 317 S.W.3d 540, 550 (Tex.App.-Houston [14th Dist.] 2010, pet. denied); *Swink*, 999 S.W.2d at 112. In fact, on appeal Downing has not requested a new trial or a remand for rendition. Instead, Downing has requested that this court reverse the trial court's JNOV and render judgment on the jury's verdict.

The Burnses' appellate issues lack merit, except for their challenge to the sufficiency of the evidence to support the jury's damage finding regarding the tortious-interference claim. It is proper to reverse the trial court's judgment regarding the tortious-interference claim and to remand for a new trial on that claim only. This error affects only the tortious-interference claim. As stated above, the evidence is legally insufficient to show that any defamatory statements proximately caused Downing any damage. In addition, Downing has not requested a new trial regarding the defamation claim, which has been fully litigated to a jury verdict. Either Downing should take nothing on the defamation claim (as asserted in this dissenting opinion) or no reason has been shown why Downing should not have judgment on the jury's defamation findings (under the majority's analysis). In either event, remanding only the tortious-interference claim for a new trial is not unfair to the parties. *See* Tex.R.App. P. 44.1(b) (allowing remand for new trial as to part of the case based upon error in the judgment that affects a part of the case that is separable without unfairness to the parties). Though the majority relies upon Rule 44.1(b), it cites no cases holding that a claim should be remanded for a new trial under that rule even though the claim has been fully litigated and the record shows that the trial court should have rendered judgment on the jury's verdict regarding that claim. Under precedent from this court, the proper remedy for any error by the trial court in granting JNOV is rendition of judgment on the jury's verdict, not a remand for retrial. *See Holman Street Baptist Church*, 317 S.W.3d at 550; *Swink*, 999 S.W.2d at 112.

### III. Conclusion

No party objected to the trial court's charge regarding defamation damages, and the trial court charged the jury on defamation *per quod*, not defamation *per se*. Therefore, this court cannot reverse the trial court's JNOV under the theory of defamation *per se*. Under the trial court's charge, the evidence is legally insufficient to support a finding that the Burnses' defamatory statements proximately caused Downing any damages, and the trial court did not err in granting a JNOV. But, there is error in the judgment regarding the tortious-interference claim that requires reversal and remand for a new trial on that claim. Accordingly, this court should sever, reverse, and remand the tortious-interference claim for a new trial, and affirm the remainder of the trial court's judgment. Because it does not, I respectfully dissent.