In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00029-CV

                                                ______________________________

 

 

 

 

IN THE MATTER OF THE
MARRIAGE OF CHRISTINE RUTH SLANKER AND
TED EUGENE SLANKER, JR., AND IN THE INTEREST OF 

                                            T.L.S., A MINOR CHILD

 

 

 

                                                                                                  


 

 

                                            On Appeal from the County Court at Law

                                                             Lamar County, Texas

                                                            Trial
Court No. 77863

 

                                                                                                  


 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Ted Eugene
Slanker, Jr., and Christine Ruth Slanker—after concluding that they no longer
wished to remain married to each other and struggling through two years of
contempt proceedings, restraining orders, depositions, motions to compel
discovery, at least three settings for final hearing, two attorneys for
Christine, and a trial conducted sporadically December 13–16, 2010—finally
obtained a signed divorce decree and property division December 31, 2010.[1]  Ted appeals, urging twelve, often
multifarious, points of error accompanied by almost forty pages of stated facts
and vehement argument and praying for remittitur or for remand.  Christine, with a micro-brief containing just
three lines of argument, agrees that the trial court erred and prays for
remand.  Because we conclude that (1)
there was harmful error and that (2) remittitur or rendition is not
appropriate, we reverse the trial court’s judgment and remand this case to the
trial court for a new trial.

(1)        There Was Harmful Error

 

            Ted
complains at length about the trial court’s valuation and characterization of
sizeable portions of the property divided and the propriety of its division,
the exclusion of Ted’s expert witness testimony, and the sorts of liens used by
the trial court to secure Ted’s payment of amounts ordered.  He also argues that, because the oral
pronouncement by the court differs noticeably from the written judgment, error
exists.  The details of the matters
leading up to the divorce are largely irrelevant to our decision; thus, we will
focus on the legal effect of the actions taken by the trial court.  On the other hand, a few procedural points
are important, however, to explain the current posture of the case.

            After the
three-day trial, the trial court ruled orally December 28, 2010, in a telephone
conference, during which one attorney was snowed-in in New York state.  The decree of divorce was signed December 31,
2010, the last day in office for the trial judge.  In addition, Ted alleges that the judgment
was signed by the court without first being sent to Ted’s attorney to
review.  Ted argues that many of the
errors in this judgment resulted from that failure.[2]  

            The new
trial judge granted judgment nunc pro tunc January 19, 2011, to make a few,
more technical, changes.  The new judge
declined to address other, more substantive, matters raised in a motion for new
trial, however, stating that, as he did not hear the case, he was uncomfortable
altering the judgment signed by the prior judge.

            The
property in dispute included some of Ted’s stock—that had changed both in value
because of market fluctuations and in number because of a reverse five-to-one
split—a cattle ranch and an associated but separate business selling grass-fed
beef and other specialty meat products. 
Also involved are a residence, a rental house, animals, an airplane, a
boat, bank accounts, and various debts.

            Although the parties agree that the
judgment should be reversed, such a result is not automatic merely
because both parties state they desire one. 
Both the rules and caselaw state that a reviewing court can reverse only
when there is error in the judgment of the court below.[3]  Davis v. Bryan & Bryan, Inc., 730 S.W.2d 643, 644
(Tex. 1987); Estate of Clinton v. S. Pac. Transp. Co., 709 S.W.2d 636, 639 (Tex. 1986); Sears,
Roebuck & Co. v. Marquez, 628 S.W.2d 772, 773 (Tex. 1982); Chrismon
v. Brown, 246 S.W.3d 102,
116 (Tex. App.—Houston [14th Dist.] 2007, no pet).

            Christine’s abbreviated brief to
this Court does, however, simplify one aspect of our review considerably.  In a civil case on appeal, we “accept as true
the facts stated unless another party contradicts them.”  Tex.
R. App. P. 38.1(g).  There are no
contradictions to the facts stated by Ted, because Christine provides no
alternative to Ted’s version of the facts on appeal.[4]

            Nevertheless, despite the agreement
that this case should be reversed, we must still find reversible error to
provide this remedy.  We now turn to that
analysis.

            We first address Ted’s argument that
the trial court committed reversible error by refusing to allow his named
expert witness, James Davis, to testify about the value of the business related
to the ranch, Slanker’s Grass-Fed Meat (SGFM), and the value of community property
goodwill connected with the business.  For
the exclusion of evidence to constitute reversible error, the complaining party
must show that (1) the trial court committed error, and (2) the error probably
caused the rendition of an improper judgment. 
State v. Cent. Expressway Sign Assocs., 302 S.W.3d 866, 870 (Tex.
2009); McCraw v. Maris, 828 S.W.2d 756, 757 (Tex. 1992); Gee v.
Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989).

            At trial, Christine’s counsel
claimed never to have been given Davis’ curriculum vitae (CV) or informed of
either Davis’ expected use as a witness or of his testimony.  The trial court refused to allow him to
testify.  The record shows, however, that,
at a pretrial hearing, Christine’s counsel explicitly acknowledged receiving
his CV, report, and opinion concerning the nature of his testimony—all some
eight months before trial.  It is clear
that Davis’ testimony would have been helpful and relevant.  It is also apparent that he was not allowed
to testify because the trial court was inaccurately informed that counsel had
not been given notice of Davis’ existence, much less a CV or a report.

            It thus appears that
the witness was excluded for failure to timely identify and provide a
report.  See Tex. R. Civ. P. 193.6.  It further appears that the decision was made
in reliance on erroneous information provided by Christine’s counsel at
trial.  A trial court’s exclusion of an
expert who has not been properly designated can be overturned only on a finding
of abuse of discretion.  Mentis v. Barnard,
870 S.W.2d 14, 16 (Tex. 1994).  In this
case, the trial court was provided inaccurate information, and disregarded the
actual state of affairs.  We conclude
that the exclusion of Davis’ testimony was an abuse of discretion.

            We must next determine whether the
trial court’s error in excluding Davis’ testimony probably caused the rendition
of an improper judgment.  Tex. R. App. P. 44.1(a); Waffle
House, Inc. v. Williams, 313 S.W.3d 796 (Tex. 2010).  To satisfy this standard, the improperly
excluded evidence must be controlling on a material issue and not cumulative of
other, properly admitted evidence.  Mentis,
870 S.W.2d at 16; Southland Lloyd’s Ins. Co. v. Tomberlain, 919 S.W.2d
822, 828 (Tex. App.—Texarkana 1996, writ denied).  The rest of the evidence also must not have
been so one-sided that the error likely made no difference in the
judgment.  Cent. Expressway Sign
Assocs., 302 S.W.3d 866.  “[I]t is
not necessary for the complaining party to prove that ‘but for’ the exclusion
of evidence, a different judgment would necessarily have resulted.”  McCraw, 828 S.W.2d at 758.  The complaining party must show only “that
the exclusion of evidence probably resulted in the rendition of an improper
judgment.”  Id.  The role that excluded evidence plays in the
context of the trial is also important. 
Thus, the exclusion or admission is likely harmless if the evidence was
cumulative, or the rest of the evidence was so one-sided that the error likely
made no difference in the judgment.  Reliance
Steel & Aluminum Co. v. Sevcik, 267 S.W.3d 867, 873 (Tex. 2008).  But if erroneously admitted or excluded
evidence was crucial to a key issue, the error is likely harmful.  Id. 
Determining whether a particular error is harmful depends on the
particular case.  Cent. Expressway
Sign Assocs., 302 S.W.3d at 870.  In
making this determination, we review the entire record.  Id.

            In this case, the excluded testimony
was the only expert testimony from either party that would have been provided
on these subjects—essentially that SGFM had net losses of over $200,000.00 from
2006 to 2009 and that Ted had made repeated loans from sales of separate
property stocks to keep the company liquid. 
The expert would also have testified that any business goodwill was minimal
because of the losses and that any that did exist was Ted’s because of his
immersion in and total involvement with the business and its marketing, while
Christine’s actual efforts connected with that business were at best
minimal.  As the overriding matter at
issue was the valuation and nature of the property, it is difficult to think
that a possible error of approximately $200,000.00 in determining the value of
the estate would be considered de minimus. 
It was thus crucial to the key matter before the court, and its
exclusion was thus likely harmful.

            Ted also argues that the trial court
used values for stock owned by Ted that were simply wrong.  Essentially, he argues that the trial judge
followed red herrings laid out by Christine’s counsel, rather than the
evidence.  He also argues that the value
placed on the ranch was without any real support in the evidence.  The most extreme allegations involve what
either is, or at one point was, the major asset other than the ranch, a large
amount of stock owned by Ted.  Although
the evidence showed that the particular stock (TZA) had suffered a one-to-five
inverse split, reducing the number of shares owned from 16,500 to 3,300 and
that both that stock and the predecessor stock which had been traded for it had
lost value in a substantial manner, Christine continued to argue that Ted had
sold stock and secreted in some unknown place hundreds of thousands of
dollars.  Christine appears to have
compounded the error by using the pre-split number of shares and multiplied
that by the post-split value per share to calculate the amount that should
exist in the brokerage account and which obviously was not there.  

            The result was that Christine’s
counsel informed the court that the value of the two stocks was over $800,000.00,
when the remaining shares of stock at the time of trial was much less.

            The trial court did not make any
findings of fact about the stock valuation, and its judgment contains no
specific references to stock valuations other than a generic statement that the
Wolverton account, worth $100,000.00, was given to Ted.  The court did find that Ted could not trace
either stock or cattle back to separate property, thus evidently concluding all
such property was community.  However,
Christine also acknowledged that the brokerage account had belonged to Ted well
before the marriage and that the predecessor stock was in the account at the
time of their marriage.  Thus, though her
testimony that particular stocks were acquired during marriage was correct, the
evidence indicates for the most part not a purchase from outside, but shifting
of assets from one stock to another within the account, a factor suggesting
that tracking Ted’s separate property might be appropriate.

            In a tertiary argument, Ted also
complains that funds derived from his separate property accounts made up
shortfalls in the community-property business, but were not properly credited
in his favor by the trial court.

            Although counsel’s argument may have
merit, we have not followed the argument entirely.  But, based on Ted’s recitation of numerous
facts, pointing to error in the trial court, see Tex. R. App. P. 38.1(g), we conclude that the trial court
erred based on the evidence and argument at trial, in characterizing the
amounts involved in the brokerage account as wholly community.

            Because there is reversible error,
we are authorized to accept the parties’ agreement that reversal is appropriate
here.

(2)        Remittitur or Rendition Is Not
Appropriate

 

            Ted’s reply brief argues that,
notwithstanding the agreement that error occurred, Ted has also requested a
remittitur or rendition.  He asserts,
therefore, that a simple reversal and remand is not enough.  A rendition or a suggestion of remittitur
could be available in limited circumstances where this Court was presented with
evidence of such absolute clarity that it could render a judgment of property
division differing from the trial court’s, or could suggest a remittitur to
correct an imbalance in the intentionally disproportionate division made by the
trial court.  See Phillips v. Phillips,
296 S.W.3d 656, 682 n.12 (Tex. App.—El Paso 2009, pet. denied); Burney v.
Burney, 225 S.W.3d 208, 220 n.3 (Tex. App.—El Paso 2006, no pet.).

            But, the evidence is not such as to
allow this Court to render judgment or suggest a remittitur as requested by
Ted.  The division of multiple
properties, some separate, some community, is by its very nature a judgment
call based on the evidence and what is believed by the trial court.  This Court, although it may conclude certain
property is separate and certain property is community, is not in a position to
observe the parties and bury itself in the minutiae of all the lists of
properties these parties evidently believed important enough to demand
possession of as a result of the division. 
In such a situation, rendition is not appropriate.  Ragsdale v. Progressive Voters League,
801 S.W.2d 880, 882 (Tex. 1990); see Rosenblatt v. Freedom Life Ins. Co. of
Am., 240 S.W.3d 315, 324 (Tex. App.—Houston [1st Dist.] 2007, no pet.); McMillin
v. State Farm Lloyds, 180 S.W.3d 183, 211 (Tex. App.—Austin 2005, pet.
denied) (“We cannot render judgment . . . because the evidence is not
conclusive.”).

            An appellate court can also suggest
an appropriate remittitur.  However, the
availability of that remedy is limited in scope.  Typically, it exists in conjunction with
excessive damage awards.  See Tony
Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 315–16 (Tex. 2006) (Johnson,
J. concurring); Larson v. Cactus Util. Co., 730 S.W.2d 640, 641 (Tex.
1987); CIGNA Healthcare of Tex., Inc. v. Pybas, 127 S.W.3d 400, 415
(Tex. App.—Dallas 2004, judgm’t withdrawn). 
It can be appropriate regarding a default judgment with a variance
between the pleadings and the judgment actually entered.  Gulf States Petroleum Corp. v. Gen. Elec.
Capital Auto Lease, 134 S.W.3d 504, 510 (Tex. App.—Eastland 2004, no pet.);
cf Nat’l Freight, Inc. v. Snyder, 191 S.W.3d 416, 426 (Tex.
App.—Eastland 2006, no pet.) (declining to allow remittitur as remedy for
failure to properly segregate past medical expenses at trial).

            When a record does not allow us to
determine an amount of remittitur that might be properly suggested, that remedy
is likewise unavailable, and we must remand for a new trial.  See Downing v. Burns, 348 S.W.3d 415 (Tex.
App.—Houston [14th Dist.] 2011, no pet.). 
In such a situation, the exact amounts to be provided to each party are
not known with the clarity that might allow remittitur to be available.  See Playboy Enterp., Inc. v. Editorial
Caballero, S.A. de C.V., 202 S.W.3d 250, 272 (Tex. App.—Corpus
Christi 2006, pet. denied).

            We decline the invitation to either
render judgment or suggest a remittitur.

 

            We reverse the judgment of the trial
court as to the property division and remand the cause for a new trial on that
subject.

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          November
2, 2011      

Date Decided:             November
18, 2011

 











[1]December
31, 2010, was the last day on the job for the trial judge.  The newly elected judge of the Lamar County
Court at Law took office the next day. 
That transition affected this case.





[2]The
judgment signed by the trial judge who tried the case and granted the divorce ordered
a $300,000.00 judgment to be paid in 100 monthly installments of $300,000.00
each.  It also contained other details that
were either incomplete or inconsistent with the oral pronouncements of the
trial court, as shown by the motion for judgment nunc pro tunc filed by
opposing counsel and confirmed by the reporter’s record.   In that regard, there was also a complaint
about a schedule A that was part of the inventory used by Christine’s counsel
and attached to a proposed judgment—but although not used or referenced by the
trial judge had been attached to the judgment, incorrect tenses being used in
connection with stock account language, a failure to distinguish between a
business and a website awarded to Ted, and several other matters.  We also note, that even though the findings
of fact state that only Christine had separate property, the judgment itself is
supported by an attachment that specifies certain property as being separate
property of Ted.  Ted also contends that the errors in characterization of property and
in valuing property led to an unsupportable order of a $300,000.00 judgment
against Ted to “equalize” the estate.

                Such
alleged errors are not unique to the judgment. 
In a motion for contempt, Christine’s attorney alleged that Ted was in
contempt because he had been “ordered to provide 90 pounds of human meat per
month and 150 pounds of dog and cat meat per month to Christine . . . and owes
petitioner 630 pounds of human meat and 1050 pounds of dog and cat meat which
he has not provided to her and their child.” 
The dogs, cats, and humans in the area applaud this failure.





[3]This
case does not involve an agreement by the parties to dismiss an appeal under
Rule 42.1 of the Texas Rules of Appellate Procedure.  Tex.
R. App. P. 42.1.

 





[4]That
procedural artifact does not necessarily establish Ted’s recited facts for
general purposes, on a retrial, but allows us to accept Ted’s statement of
facts as a given for the purposes of our analysis.